NEW YORK LIFE INSURANCE COMPANY *v.* HENDREN.

This court has no jurisdiction to re-examine the judgment of a State court in a
case where the pleadings and the instructions asked for and refused present
questions as to the effect, under the general public law, of a sectional civil
war upon the contract which was the subject of the suit, and when it was not
contended that that law, as applicable to the case, had been modified or sus-
pended by the constitution, laws, treaties, or executive proclamations, of the
United States.

ERROR to the Supreme Court of Appeals of the State of
Virginia.

The plaintiff in error, a company incorporated under the
laws of the State of New York, having its home office in New-
York City, issued its policy of insurance, bearing date Aug. 25,
1856, to Mrs. Hendren, the defendant in error, on the life of
her husband. The insurance was negotiated through an agent
of the company at Norfolk, in Virginia, in which State Mrs.
Hendren and her husband then, and until his death, resided.
He died Aug. 15, 1862.

She brought this suit to recover the amount of the policy.
Judgment was rendered in her favor in the Court of the Cor-
poration of the City of Norfolk, which was affirmed by the
Supreme Court of Appeals of the State. The company sued
out this writ of error.

*Mr. Edward O. Hinkley* for the plaintiff in error.

*Mr. Albert Ritchie, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the
court.

This record does not show that any Federal question was de-
cided or necessarily involved in the judgment rendered by the
court below. The pleadings, as well as the instructions asked
and refused, present questions of general law alone. The court
was asked to decide as to the effect, under the general public
law, of a state of sectional civil war upon the contract of life
insurance, which was the subject of the action. It was not
contended, so far as we can discover, that the general laws of
war, as recognized by the law of nations applicable to this case,
were in any respect modified or suspended by the constitution,

laws, treaties, or executive proclamations, of the United States. This distinguishes the present case from *Matthews* v. *McStea*, where jurisdiction was taken at the last term (20 Wall. 640), and the case decided at the present term. 91 U. S. 7. The question was there presented, whether the President's proclamation of April 19, 1861, did not suspend, for the time being, the operation of that principle in the law of war which prohibited commercial intercourse in time of war between the adherents of the two contending powers. Here there is nothing of the kind.

Our jurisdiction over the decisions of the State courts is limited. It is not derived from the citizenship of the parties, but from the questions involved and decided. It must appear in the record, or we cannot proceed. We act upon questions actually presented to the court below, not upon such as might have been presented or brought into the case, but were not.

The case, therefore, having been presented to the court below for decision upon principles of general law alone, and it nowhere appearing that the constitution, laws, treaties, or executive proclamations, of the United States were necessarily involved in the decision, we have no jurisdiction. We have often so decided. *Bethel* v. *Demaret*, 10 Wall. 537 ; *Delmas* v. *Insurance Co.*, 14 id. 666 ; *Tarver* v. *Keach*, 15 id. 67 ; *Rockhold* v. *Rockhold, supra*, p. 129.

*Dismissed for want of jurisdiction.*

MR. JUSTICE BRADLEY dissenting.

I dissent from the judgment of the court in this case. When a citizen of the United States claims exemption from the ordinary obligations of a contract by reason of the existence of a war between his government and that of the other parties to it, the claim is made under the laws of the United States by which trade and intercourse with the enemy are forbidden. It is not by virtue of the State law that such intercourse is forbidden; for a separate State cannot wage war: that is the prerogative of the general government. It is in accordance with international law, it is true ; but international law has the force of law in our courts, because it is adopted and used by the United States. It could have no force but for that, and may

be modified as the government sees fit. Of course, the government would not attempt to modify it in matters affecting other nations, except by treaty stipulations with them : if it did, it would prepare itself to carry out its resolutions by military force. But, in many things that *prima facie* belong to international law, the government will adopt its own regulations : such as the extent to which intercourse shall be prohibited ; how far property of enemies shall be confiscated ; what shall be deemed contraband, &c. All this only shows that the laws which the citizens of the United States are to obey in regard to intercourse with a nation or people with which they are at war are laws of the United States. These laws will be the unwritten international law, if nothing be adopted or announced to the contrary ; or the express regulations of the government, when it sees fit to make them. But in both cases it is the law of the United States for the time being, whether written or unwritten.

The case, then, of claiming dissolution or extinction of a contract on the ground of the existence of a war, is precisely a case within the meaning of the law which gives a writ of error to this court from the judgment of a State court where a right or immunity is claimed under the Constitution of the United States, or under an authority exercised under the United States. The power given by the Constitution to Congress to declare war, and the authority of the general government in carrying on the same, are the grounds on which the exemption or immunity is claimed. It is under the authority of the government of the United States that the party is not only shielded, but prevented, from the execution of his contracts. If he performed them, it would be a violation of his obligations to his government.

It is highly expedient that obligations and immunities of this sort, arising from public law and the public relations of the government, should be subject to uniform rules, and to the final adjudication of the judicial department of the general government.