# TULLOCK *v.* MULVANE.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 59. Argued October 25, 28, 1901.—Decided March 3, 1902.

The propositions in this case involving Federal questions were duly raised below.

Previous to the bringing of the suit in the state court upon the bond, by stipulation filed in the equity cause in the United States court, upon which an order of the court was entered, the bill of complaint had been dismissed as to all the defendants but Mulvane, and it was expressly agreed that all demand for relief by way of specific performance should be withdrawn.

The Circuit Court of Appeals correctly decided that the necessary effect of this agreement was to withdraw from the case all controversy on the subject of the injunction. As by the stipulation Mulvane had not waived any rights of action by reason of damages caused by the injunction, if any, but on the contrary his rights were expressly saved, and as the stipulation was made the basis of an order of the court which had the necessary effect to dismiss from the cause all the grounds upon which alone the rightfulness of the injunction could have been asserted, we think there was a final decision, within the import of the condition of the bond, that the injunction ought not to have been granted.

The claim of immunity from liability for attorney's fees as one of the elements of damage under the injunction bond presented a Federal question, which was incorrectly decided by the court below in holding that it was proper to award the amount of such fees in enforcing the bond.

A bond given in pursuance of a law of the United States is governed, as to its construction, not by the local law of a particular State, but by the principles of law as determined by this court, and operative throughout the courts of the United States.

GEORGE P. WESCOTT and Samuel Hanson were complainants in a bill in equity which was filed, on January 13, 1893, in the Circuit Court of the United States for the District of Kansas. Joab Mulvane and various other persons and corporations were made defendants to the bill. The principal relief sought was to compel the specific performance of a contract alleged to have been entered into between the complainants and Mulvane for the sale by the latter and purchase by the former of all the capital stock of the Topeka Water Supply Company, a Kansas cor-

poration, also a defendant to the suit. Incidentally it was sought to annul a purported sale of the waterworks plant to another of the defendants, the Topeka Water Company, a Kansas corporation, which it was asserted had been organized by Mulvane. The bill also sought to prevent the Topeka Water Company from encumbering the plant with a mortgage which, it was averred, was about to be executed, and to restrain the issuing and negotiation of bonds proposed to be secured by such mortgage and the sale or disposition of stock of both the Topeka Water Supply Company and the Topeka Water Company. The members of a copartnership, styled Coffin & Stanton, doing business in the city of New York, whom it was charged were offering to the public for sale the bonds so proposed to be issued, were likewise joined as defendants in the bill.

On February 13, 1890, the court ordered a temporary injunction to issue, as prayed, upon the giving of an approved bond. Two days later, however, it was ordered that instead of a bond the complainants " may deposit with the clerk of this court the sum of $75,000 in cash, and that said deposit shall stand for a bond for all damages from the commencement of this suit until the further order of the court, whereby said complainants will be obligated and bound to pay to the defendants all costs and damages aforesaid, if it shall be finally held that said injunction or restraining order was improvidently granted."

On April 4, 1890, upon a hearing, the court sustained a motion which had been filed on behalf of Coffin & Stanton to dissolve the temporary injunction. The dissolution was predicated upon the ruling that an indispensable party had not been made a defendant and could not be made without ousting the jurisdiction of the court, because such party defendant and the plaintiffs were citizens of the same State.

Thereafter, on June 3, 1890, by leave of court, a formal bond was substituted for the cash deposit which had been made under the order of the court previously stated. A. J. Tullock and W. M. D. Lee were the sureties. The bond recited the order for an injunction, the subsequent permission to deposit cash in lieu of a bond, the making of such cash deposit, the withdrawal of the deposit with the sanction of the court on

the condition that a bond be executed. The fact that the injunction had been in the meanwhile dissolved by the court was also recited. The condition of the bond is reproduced in the margin.[1]

In October, 1890, pursuant to a stipulation made between complainants and certain of the defendants, filed in the cause, the bill was dismissed as to all the defendants except Mulvane, and so much of the bill as sought a specific performance of the alleged contract between complainants and Mulvane was withdrawn. By the stipulation the defendants who were dismissed from the cause expressly waived all right of action upon the injunction bond or otherwise, by reason of the allowance of the temporary injunction.

On September 26, 1892, upon the hearing of the cause as between complainants and Mulvane, the bill was dismissed. The case was then appealed to the Circuit Court of Appeals for the Eighth Circuit. That court decided the appeal on the assumption that the question for decision was whether, in view of all the circumstances attending the making of the agreement between complainants and Mulvane, it was one which a court of equity could specifically enforce. The court observed that the cause had evidently been argued and disposed of in the court below on the theory that under the stipulation, even though the right to have specific performance had been waived, nevertheless damages might be assessed by a court of equity as for a breach of the contract, if the court was of opinion that the ap-

---

[1] "Now, therefore, if the said George P. Wescott and Samuel Hanson shall pay, or cause to be paid, to the said Joab Mulvane, the Topeka Water Supply Company, the Topeka Water Company, William Edward Coffin, Walter Stanton, Charles H. Jackson, and Charles F. Street, partners doing business under the firm name and style of Coffin & Stanton, and the Atlantic Trust Company, and to each of them, all damages which they, or either of them, have already sustained or may at any time sustain by reason of the granting or issuing of said restraining order, or the granting and issuing of said temporary injunction, if it shall be finally decided that said restraining order or said temporary injunction ought not to have been granted, or the withdrawing from the hands of the clerk the said sum of seventy-five thousand dollars deposited in lieu of the bond as required by the court to be given, then the above obligation shall be null and void; otherwise shall be and remain in full force and effect."

pellants were, at the time the bill was filed, entitled to specific performance. Assuming, then, the regularity of this procedure, and its power as an equity court to execute the agreement, the court reviewed the evidence, and held that the complainants were not at the time the bill was filed entitled to the specific performance of the contract, for the reason that they had never put the defendant Mulvane in default by tendering him the sum which he was entitled to receive under the contract of sale, to enforce which the bill had been filed. The court further observed :

" It is assigned for error that the Circuit Court erred in dissolving the temporary injunction as well as in dismissing the bill on the ground heretofore stated. As the first of these assignments was somewhat pressed on the argument, it becomes necessary to say, and we think is all sufficient to say, that the appellants cannot be heard to complain in this court of the order dissolving the temporary injunction after voluntarily withdrawing so much of their bill as sought a specific performance of the alleged contract. An injunction could only be awarded as an incident to that species of equitable relief, and when the allegations and the prayer of the bill looking to that form of relief were withdrawn, the injunction necessarily shared the same fate."

Intermediate the dismissal of the bill by the Circuit Court and the affirmance of the decree of dismissal by the Circuit Court of Appeals, Mulvane, on November 5, 1892, instituted the present action in the state district court of Shawnee County, Kansas, against A. J. Tullock and W. M. D. Lee, the sureties upon the injunction bond above referred to. In this action recovery was sought for the sum of $75,000 as damages sustained by reason of the injunction. Service was not made upon Lee, however, and the action was prosecuted solely against Tullock. An answer was filed, which consisted of a general denial and a plea that the action was prematurely brought because of the pendency of the appeal in the Circuit Court of Appeals.

The action in the state court was tried to a jury. Because of the ruling by the trial judge, in excluding evidence as to expenditures for attorneys' fees in procuring the dissolution of the

injunction, Mulvane prosecuted error, and the judgment entered by the trial court was held by the Supreme Court of Kansas to be erroneous because of such ruling. 58 Kansas, 622.

A new trial was thereupon had in the lower court. At this trial, on the offer by Mulvane, the plaintiff, of evidence tending to show payments made by him for attorneys' fees, such evidence was objected to as follows:

"The defendant further objects because it appears that this bond was given in a proceeding in the Federal court, and under the law of the United States governing the liability of parties for damages on bonds or in such proceeding in Federal courts attorneys' fees are not included."

At the close of all the evidence, the court allowed the respective parties to amend their pleadings. The petition was amended, among other particulars, by setting out specifically the sum of asserted damage resulting from the payments alleged to have been made by Mulvane to various attorneys in resisting the allowance and procuring the dissolution of the injunction. In the amendment of the answer it was specifically pleaded that the sums paid to the attorneys by Mulvane were not elements of damage embraced within the terms of the injunction bond, if such bond was construed and enforced according to the rules applicable in the courts of the United States as expounded by the Supreme Court of the United States. It was asserted that the bond must be measured by the principles controlling in the court where it was given, and that to hold otherwise would deprive the surety of the protection of the law of the United States, in contemplation of which he had contracted.

After the amendments and in negation of requests for instructions to the jury made by the plaintiff, the defendant asked the court to charge in substance as follows: 1. That as by the condition of the bond liability could not arise until it had been finally determined by the United States court, that the injunction ought not to have been granted, the sureties upon the bond were discharged from liability by the effect of the stipulation filed in the cause in which the injunction had been granted, whereby it resulted that a final determination by the court

whether the injunction ought not to have been granted was by
consent of parties prevented.   2.  If the stipulation had not the
effect thus claimed, then at the time the action on the bond was
commenced an appeal was pending in the Circuit Court of Ap-
peals of the United States from the judgment rendered in the
cause, wherein the injunction had been allowed and the bond
given, and that the action upon the bond was premature.   In
addition, the immunity which had been previously asserted,
arising from the rule governing in the courts of the United
States on the subject of attorneys' fees was, in view of the plead-
ings and the prior proceedings in the case, reiterated by a re-
quest for an instruction that no attorneys' fees could be recovered
on the bonds.  All the requests of the defendant having been
denied and the court having charged the jury to the contrary, a
verdict was returned in the sum of $25,000, of which it may be
inferred that about the sum of $20,000 was for payments which
Mulvane asserted he had made on his own behalf to the attor-
neys who had represented his interest in resisting the allowance
of and procuring the dissolution of the injunction, albeit that
most of the attorneys to whom the payments in question were
made were likewise attorneys of record for the other defendants
who had specifically in the stipulation waived all claims of dam-
ages growing out of the injunction.   From the judgment ren-
dered on the verdict of the jury the cause was carried to the
Supreme Court of Kansas, and in that court it was affirmed.
61 Kansas, 650.   The opinion of the court in effect considered
and disposed of the claims of alleged Federal right which have
been previously referred to, and hold them to be untenable.   To
this judgment of affirmance error was prosecuted and the cause
is here for review.

   *Mr. W. H. Rossington* for plaintiff in error.  *Mr. Charles
Blood Smith* and *Mr. Clifford Histed* were on his brief.

   *Mr. N. H. Loomis* for defendant in error.  *Mr. A. L. Wil-
liams* was on his brief.

   MR. JUSTICE WHITE, after making the foregoing statement,
delivered the opinion of the court.

The assignments of error, though fourteen in number, are reducible to three propositions.

1. A contention that as the bond provided for a liability only in case it was finally decided that the injunction was wrongfully granted, no recovery could be had upon the bond, because the stipulation between the complainants and certain of the defendants had the effect of rendering it impossible to have a final determination in the courts of the United States whether the injunction ought originally to have been granted.

2. A claim on the part of the defendant that as the bond for injunction was executed under the order of a court of equity of the United States, and therefore by an authority exercised under the United States, and as liability was only to arise when it had been finally decided that the injunction ought not to have been granted, action on the bond could not be brought pending an appeal to the Circuit Court of Appeals of the United States, and the final determination by that court of the controversy.

3. An assertion that as, by the settled rule of the courts of equity of the United States, attorneys' fees were not an element of damage covered by the terms of an injunction bond given in such court, recovery of such fees on such bond was not within the purview of the bond when construed with reference to and by the light of the authority under which the bond was given.

It is urged by the defendant in error that these contentions involve no Federal question and that if they do they were not sufficiently set up in the lower courts, and therefore this court has no jurisdiction to review them. We dispose at once of the contention that if the propositions involve Federal questions they were not duly raised below, by referring to the statement which we have made of the case, whereby it appears that the contentions were raised below by the pleadings, by the objections to evidence and by the requests for instructions, and indeed as so raised were expressly considered and directly passed upon by both the trial court and the Supreme Court of the State of Kansas, which latter fact in and of itself suffices to present the Federal question, even if it had been otherwise

ambiguously raised on the record, which is not the case. *Oxley Stave Co.* v. *Butler County*, 166 U. S. 648.

In determining whether these Federal questions are involved, we shall for the moment take it for granted that the premises upon which such asserted questions rest are well founded, and if under such hypothesis we find that there is jurisdiction it will then be our duty to put such assumption out of view and determine the merits of the contentions.

Whilst apparently the propositions involve several distinct assertions of Federal right, in their ultimate analysis they reduce themselves to one and the same contention; that is, that a bond given for an injunction in an equity cause in a court of the United States is to be construed with reference to the liability administered in the courts of the United States on that subject as settled by this court. That this fundamental proposition embraces all the contentions would seem to be clear, when it is borne in mind that the controversy as to the stipulation and as to the pendency of the cause in the Circuit Court of Appeals assert both the generic right of the defendant to have the obligations under the bond measured and determined by the law prevailing in the courts of the United States and the claim as to the attorneys' fees propounds but the same right as to one of the elements of damage which it was asserted the bond embraced. Whilst the unity of the propositions is thus demonstrable, as in the court below and in argument they have been separately treated and different considerations have been assumed to apply to them, we shall consider the propositions separately.

We embrace the first two contentions under one heading, as follows:

First. *Did the claim that there had been no breach of the condition of the bond because of the stipulation filed in the cause in which the bond was given and because of the pendency of the appeal in the Circuit Court of Appeals present Federal questions; and, if yes, were they well founded?*

It may not, we think, be doubted that a bond for injunction in an equity court of the United States given under the order of such court is a bond executed in and by virtue " of an author-

ity exercised under the United States." Rev. Stat. sec. 709. Certainly, the courts of the United States derive all their powers from the Constitution and laws of the United States, and their authority is therefore exercised thereunder. Being then an obligation entered into by virtue of such authority, the conclusion cannot be escaped that the defence specially set up that no liability on the bond could arise until the court of the United States in which the controversy was pending had finally determined that the injunction should not have been granted, was the assertion of an immunity from liability depending on an authority exercised under the United States, and therefore necessarily involved the decision of a Federal question. To state the result which must necessarily flow from a contrary deduction is sufficient of itself to demonstrate the unsoundness of the reasoning by which the non-Federal nature of the question can alone be upheld. For it is clear that if it be true that the bond given in a Federal court of equity on the granting of an injunction is not to be construed with reference to the rules of law applicable to such bonds in such court, then there can be no certain general rule by which to determine the liability of the obligors upon the bond. Their responsibility would be one thing in a court of the United States and a different thing in the courts of the various States, which would imply that the parties did not contract with reference to any definite rule of liability. Indeed, the argument conduces to a conclusion which necessarily cripples the power of the court under whose order an injunction bond is executed. It is settled that such court has the inherent right to set the bond aside and to determine in its discretion whether recovery could be had upon it. *Russell* v. *Farley*, 105 U. S. 433. And yet if the liability upon the bond when given can be measured in courts other than the court requiring the execution of the bond, by a wholly different rule of liability from that which obtained in the court which had ordered the giving of the bond, it must follow that although the latter court had decreed that the injunction had rightfully issued, yet in an action upon the injunction bond in another forum the sureties might be made to respond in damages without hope of redress.

A reference to some of the decided cases concerning what

constitutes a claim of immunity arising from an authority exercised under the United States, will serve at once to refute the contention that no Federal question is here presented.

In *Dupasseur* v. *Rochereau*, 21 Wall. 130, the question for decision was whether a state court had given due effect to a decree of a court of the United States, and it was asserted that the contention that it had not presented no Federal question. Speaking through Mr. Justice Bradley, the court said (p. 134):

"Where a state court refuses to give effect to the judgment of a court of the United States rendered upon the point in dispute, and with jurisdiction of the case and the parties, a question is undoubtedly raised which, under the act of 1867, may be brought to this court for revision. The case would be one in which a title or right is claimed under an authority exercised under the United States, and the decision is against the title or right so set up. It would thus be a case arising under the laws of the United States, establishing the Circuit Court and vesting it with jurisdiction; and hence it would be within the judicial power of the United States, as defined by the Constitution; and it is clearly within the chart of appellate power given to this court, over cases arising in and decided by the state courts."

In *Factors' & Traders' Insurance Company* v. *Murphy*, 111 U. S. 738, a court of the United States sitting in bankruptcy had ordered a sale of real property of the bankrupt free from encumbrances. The property was purchased at the sale on behalf of lienholders. Subsequently one who possessed a lien on the property at the time the order was entered and sale made, brought suit in a state court of Louisiana to foreclose such lien, claiming that she had not been a party to the bankruptcy proceedings, and that her lien was unaffected by the sale. The defendant, in whose name title had been taken, while averring that the plaintiff was interested in the purchase at the sale made under the order of the United States court, insisted that the lien of the mortgage of plaintiff had been extinguished by such sale. The state court having decreed in favor of plaintiff, a writ of error was prosecuted from this court. In reversing the judgment of the state court, it was said (p. 741):

"Counsel for defendant in error deny the jurisdiction of this court and move to dismiss the writ. But it is apparent that the only controversy in the case relates to the effect to be given to the sale under the order of the District Court of the United States, to sell the mortgaged property free from incumbrance. Both parties assert rights under this order and sale. Plaintiffs in error assert that the sale as made was valid, and, being sold free from incumbrances, extinguished Mrs. Murphy's lien as well as others. Defendant asserts that it had the effect of discharging all other liens but hers, and thus gave her the exclusive, paramount lien on all the property so sold. Both the parties, therefore, rely upon rights under Federal authority, and as the right of plaintiff in error was denied by the court the writ of error lies."

In *Avery* v. *Popper*, 179 U. S. 305, the two cases last above referred to were approvingly cited, and the rule was declared to be that where a controversy in the state court presented a contention as to the validity or proper construction of an order or decree rendered by a court of the United States, a Federal question was presented reviewable by this court (p. 314).

In *Crescent Live Stock Company* v. *Butchers' Union*, 120 U. S. 141, the facts were briefly these : Under a bill filed in a Circuit Court of the United States, a temporary injunction had been allowed after hearing, and a bond had been given under an order of the court, the injunction was perpetuated by the Circuit Court on the final hearing. The case was appealed to this court, and the decree of the Circuit Court was reversed. Suit was brought in a court of the State of Louisiana upon the injunction bond given in the Federal court, against the principal and surety *in solido* and against the principal alone, to recover damages for the malicious prosecution of the injunction suit in the Federal court. It was claimed by the defendants that the final decree of the Circuit Court of the United States, although subsequently reversed by this court, constituted probable cause, and therefore there could be no recovery on the alleged cause of action for malicious prosecution. Both the state trial court by way of instructions to the jury and the Supreme Court of Louisiana decided that the decree of the Circuit Court of the

United States did not constitute probable cause, because prior to the decision of the Circuit Court of the United States a contrary view to that which the Circuit Court adopted had been announced by the highest court of the State of Louisiana. The jurisdiction of this court to review the controversy was challenged upon the very grounds now relied upon, and the court said (p. 146):

"It is argued by counsel for the defendant in error that this does not embrace any Federal question; that the effect to be given to a judgment or decree of the Circuit Court of the United States sitting in Louisiana by the courts of that State is to be determined by the law of Louisiana, or by some principle of general law as to which the decision of the state court is final; and that the ruling in question did not deprive the plaintiffs in error of 'any privilege or immunity specially set up or claimed under the Constitution or laws of the United States.' But this is an error. The question whether a state court has given due effect to the judgment of a court of the United States is a question arising under the Constitution and laws of the United States."

In *Meyers* v. *Block*, 120 U. S. 206, the case came to this court on error to a state court, and involved the correctness of the construction by that court of the terms of an injunction bond given in a court of the United States. This court treated the matter of jurisdiction as one of course, held that the parties signing the bond must be presumed to have been cognizant of the order under which the bond was given, and to have contracted in reference thereto, and that the bond should be read in the light of the order, and the court applied to the interpretation of the bond its own views of the applicable principles of law.

The cases of *New York Life Insurance Co.* v. *Hendren*, 92 U. S. 286; *Provident Savings Society* v. *Ford*, 114 U. S. 635; *Blackburn* v. *Portland Gold Mining Co.*, 175 U. S. 571, and others of like character, do not conflict with the rule which we apply in this cause, and which was expounded in the cases to which we have previously referred. This results when it is observed that none of the cases just above referred to involved

the construction or effect of a law of the United States or a judgment, decree or order or other act done under and by virtue of the authority of a court of the United States or a claim of immunity thereunder.

The contention as to the prematurity of the suit presenting then a Federal controversy, the question is, was the claim of prematurity well founded?

Previous to the bringing of the suit in the state court upon the bond, by stipulation filed in the equity cause in the United States court, upon which an order of the court was entered, the bill of complaint had been dismissed as to all the defendants but Mulvane, and it was expressly agreed that all demand for relief by way of specific performance should be withdrawn. We think that the Circuit Court of Appeals correctly decided that the necessary effect of this agreement was to withdraw from the case all controversy on the subject of the injunction. As by the stipulation Mulvane had not waived any rights of action by reason of damages caused by the injunction if any, but on the contrary his rights were expressly saved, and as the stipulation was made the basis of an order of the court which had the necessary effect to dismiss from the cause all the grounds upon which alone the rightfulness of the injunction could have been asserted, we think there was a final decision, within the import of the condition of the bond, that the injunction ought not to have been granted. As respects the argument that by reason of the execution of the stipulation, the sureties upon the injunction bond were absolutely discharged, because thereby a final determination of the rightfulness of the allowance of the injunction was prevented, we think it obvious that the sureties when executing the bond did so, subject to the right of the complainants in good faith to dismiss their bill, or to make a stipulation such as that we have referred to, which was in effect the equivalent of the dismissal of the bill in so far as all equitable relief was concerned. We are thus brought to consider the second contention, which is,

Second. *Did the claim of immunity from liability for attorneys' fees, as one of the elements of damage under the injunction bond, present a Federal question; and if yes, was it cor-*

*rectly decided by the court below that it was proper to award the amount of such fees in enforcing the bond?*

The first branch of this question has already been disposed of by the reasons given and authorities cited in the consideration of the proposition previously passed upon. It is insisted, however, that such is not the case, because whilst it is true the courts of the United States exercise their authority under the Constitution and laws of the United States, that, as there is no express statutory authority regulating injunction bonds, therefore in determining the measure of liability on them no claim of immunity arising from an authority exercised under the United States can arise. But this is a mere form of restating the contention we have already disposed of. The test is not the particular source, or form by which the authority of the United States has been conferred or is exerted, but whether such authority existed and was exercised and an immunity is claimed under it.

Besides, by express provision of the Revised Statutes (sec. 617) proceedings of the courts of the United States in equity causes are subject to regulation by this court, with power to modify and change such rules. And rule No. 90, promulgated under the authority thus conferred, provides as follows:

"In all cases where the rules prescribed by this court or by the Circuit Court do not apply, the practice of the circuit court shall be regulated by the present practice of the High Court of Chancery in England, so far as the same may be reasonably applied consistently with the local circumstances and local conveniences of the district where the court is held, not as positive rules, but as furnishing just analogies to regulate the practice."

And it is by the force and effect of this rule that the equity courts of the United States exercise their power with respect to the exaction of security when granting writs of injunction. *Russell v. Farley*, 105 U. S. 433.

It follows that proceedings in courts of equity of the United States are regulated by rules promulgated by this court deriving their force from statutory authority, and the argument which we have just considered, even if it were not erroneous,

would be inapposite. The jurisdiction to review being then established, it remains only to consider whether the attorneys' fees were properly allowed by the court below as an element of damages on the bond. That they were not, is settled.

In *Oelrichs* v. *Spain*, 15 Wall. 211, this court, speaking through Mr. Justice Swayne, said (p. 230):

" The decree of the court below was preceded by the report of a master, which the decree affirmed and followed. Upon looking into the report we find it clear and able, and we are entirely satisfied with it, except in one particular. We think that both the master and the court erred in allowing counsel fees, as a part of the damages covered by the bonds.

" In *Arcambel* v. *Wiseman*, 3 Dall. 306, decided by this court in 1796, it appeared ' by an estimate of the damages upon which the decree was founded, and which was annexed to the record, that a charge of $1600 for counsel fees in the courts below had been allowed.' This court held that it ' ought not to have been allowed.' The report is very brief. The nature of the case does not appear. It is the settled rule that counsel fees cannot be included in the damages to be recovered for the infringement of a patent. *Tesse* v. *Huntingdon*, 23 How. 2 (64 U. S. XVI. 479); *Whittemore* v. *Cutter*, 1 Gall. 429; *Stimson* v. *The Railroads*, 1 Wall. Jr. 164. They cannot be allowed to the gaining side in admiralty as incident to the judgment beyond the costs and fees allowed by the statute. *The Baltimore*, 8 Wall. 378 (75 U. S. XIX. 463).

" In actions of trespass where there are no circumstances of aggravation, only compensatory damages can be recovered, and they do not include the fees of counsel. The plaintiff is no more entitled to them, if he succeed, than is the defendant if the plaintiff be defeated. Why should a distinction be made between them? In certain actions *ex delicto* vindictive damages may be given by the jury. In regard to that class of cases this court has said: 'It is true that damages assessed by way of example may indirectly compensate the plaintiff for money expended in counsel fees, but the amount of these fees cannot be taken as the measure of punishment or a necessary element in its infliction.' *Day* v. *Woodworth*, 13 How. 370, 371.

" The point here in question has never been expressly decided by this court, but it is clearly within the reasoning of the case last referred to, and we think is substantially determined by that adjudication. In debt, covenant and *assumpsit* damages are recovered, but counsel fees are never included. So in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the *expensa litis* to which he may have been subjected. The parties in this respect are upon a footing of equality. There is no fixed standard by which the *honorarium* can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed then are necessary. When both client and counsel know that the fees are to be paid by the other party there is danger of abuse. A reference to a master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause. It would be an office of some delicacy on the part of the court to scale down the charges, as might sometimes be necessary.

" We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

It is strenuously urged, however, and this was in effect the view taken by the court below, that although the rule against allowing attorneys' fees in actions on injunction bonds was thus settled by this court adverse to the right to recover such fees, as the local law was to the contrary, the injunction bond given in the Federal court must be enforced, not by the law of the forum in which it was given, but according to the rule of the local law. This proposition, again, however, but embodies the contention that the question of the allowance of attorneys' fees involved no Federal question, which has already been disposed of. For if it be true, and it undoubtedly is, that the giving of such a bond was an act done pursuant to an authority exercised under the Constitution and laws of the United States, it must follow that the bond so taken is to be interpreted with

reference to the authority under which it was given and the principles of jurisprudence controlling such authority, and not by the local law. To hold the contrary, as we have previously pointed out, would be but to declare that although the power conferred by Congress upon this court to adopt equity rules is controlling, nevertheless the interpretations of the rules and the limitations which arise from a proper construction of them, as expounded by this court and enunciated in its decisions, are without avail. And this yet further points out the fallacy involved in the contention that the lower court, in passing upon the issues, decided merely a question of general law involving no Federal controversy. Now it is at once conceded that the decision by a state court of a question of local or of general law involving no Federal element does not as a matter of course present a Federal question. But where on the contrary a Federal element is specially averred and essentially involved, the duty of this court to apply to such Federal question its own conceptions of the general law we think is incontrovertible. *Avery* v. *Popper*, 179 U. S. 305, 315.

Whilst in the absence of authority the foregoing considerations suffice to dispose of the case, it is also effectually concluded by authority. *Bein* v. *Heath*, 12 How. 168. In that case, as in this, it was insisted that the local law should have been applied in construing and enforcing an injunction bond given in a court of the United States. But the court, in negativing the contention, speaking through Mr. Chief Justice Taney, said (p. 178):

" Now, there is manifest error in subjecting the parties to an injunction bond, given in a proceeding in equity in a court of the United States, to the laws of the State. The proceeding in a Circuit Court of the United States in equity is regulated by the laws of Congress, and the rules of this court made under the authority of an act of Congress. And the ninetieth rule declares that, when not otherwise directed, the practice of the High Court of Chancery in England shall be followed. The eighth rule authorizes the Circuit Court, both judges concurring, to modify the process and practice in their respective districts. But this applies only to forms of proceeding and

mode of practice, and certainly would not authorize the adoption of the Louisiana law, defining the rights and obligations of parties to an injunction bond.   Nor do we suppose any such rule has been adopted by the court.  And if it has, it is unauthorized by law, and cannot regulate the rights or obligations of the parties.

" And when an injunction is applied for in the Circuit Court of the United States sitting in Louisiana, the court may grant it or not, according to the established principles of equity, and not according to the laws and practice of the State in which there is no court of chancery, as contra-distinguished from a court of common law.   And they require a bond, or not, from the complainant, with sureties, before the injunction issues, as the court, in the exercise of a sound discretion, may deem it proper for the purposes of justice.   And if, in the judgment of the court, the principles of equity require that a bond should be given, it prescribes the penalty and the condition also.   And the condition prescribed by the court in this case, but which was not followed, is the one usually directed by the court.

" In proceeding upon such a bond, the court would have no authority to apply to it the legislative provisions of the State."

Indeed, the principles announced in *Bein* v. *Heath* were in effect but the reiteration of the doctrine previously established by this court, that a bond given in pursuance of a law of the United States was governed, as to its construction, not by the local law of a particular State, but by the principles of law as determined by this court, and operative throughout the courts of the United States.   *Cox* v. *United States*, 6 Pet. 172 ; *Duncan's Heirs* v. *United States*, 7 Pet. 435.

It follows from what we have stated that there was error committed in allowing the recovery of attorneys' fees as an element of damage upon the bond in question.

*The judgment of the Supreme Court of Kansas must be reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion, and it is so ordered.*

MR. JUSTICE HARLAN, with whom concurred THE CHIEF JUSTICE and MR. JUSTICE BROWN, dissenting.

This was an action in one of the courts of the State of Kansas upon an injunction bond executed in a suit in equity in the Circuit Court of the United States for the District of Kansas—the condition of the bond being that the obligors would pay or cause to be paid to the obligees and to each of them, " all damages which they, or either of them, have already sustained, or may at any time sustain, by reason of the granting and issuing of said restraining order, or the granting and issuing of said temporary injunction, if it shall be finally decided that said restraining order or said temporary injunction ought not to have been granted."

There was a verdict and judgment against Tullock, one of the sureties in the bond. Mulvane, the plaintiff, being dissatisfied with the amount of the verdict and the rulings of the trial court, prosecuted a writ of error to the Supreme Court of Kansas, where the judgment was reversed and the cause remanded for another trial. *Mulvane v. Tullock,* 58 Kansas, 622. That court said (p. 632):

" That counsel fees are recoverable as damages upon an injunction bond has been the uniform holding of this court from the beginning, and this appears to be the view taken by most of the courts of the country. *Underhill v. Spencer,* 25 Kansas, 71; *Loofborow v. Shaffer,* 28 Kansas, 71; *Loofborow v. Shaffer,* 29 Kansas, 415; *Nimocks v. Welles,* 42 Kansas, 39; 10 Am. & Eng. Ency. of Law, 999, and cases cited. It appears, however, that there are some decisions of the Federal courts to the contrary, holding that the obligation of an injunction bond imposes no duty upon the obligor to pay the attorney's fees if the injunction is wrongfully obtained. *Arcambel v. Wiseman,* 3 Dallas, 306; *Oelrichs v. Spain,* 15 Wall. 211. It is contended that, as the bond was given in a case in one of the Federal courts, the obligation must be interpreted in accordance with the decisions of those courts. The claim is that the rules and decisions of the Supreme Court of the United States have the force of legislative declarations; that they enter into, and become a part of, the

contract of the sureties, who can only be held liable for such consequences as are the direct result of the breach and were within their contemplation at the time the bond was executed. No statute, however, prescribed the conditions of the bond nor limited the extent of liability thereon. It is true that it was within the general equitable power of the Federal court to prescribe the conditions upon which the injunction should issue. It could have granted an injunction without requiring a bond, or it might, in its discretion, have imposed such terms as it saw fit as a condition of granting the injunction. It did require the giving of a bond, and the bond was executed in accordance with the order of the court. The bond executed is in the ordinary form; is in the nature of a contract; and the liability of the obligors depends, not on the Federal Constitution or a Congressional act, but on the proper interpretation of the bond itself. In the absence of a statute fixing the measure of damages or limiting the recovery, we think the bond should be viewed in the light of an independent contract, and is to be interpreted by the general principles of the common law. It is not a mere incident of the injunction proceeding, nor can this, which is an ordinary action at law, be regarded as auxiliary to the proceeding in the Federal court. Being an independent contract, actionable in any state court where service upon the sureties can be obtained, the interpretation of the forum applies. As the action on the bond could be brought in the state court—and, indeed, the present action could not have been brought in any other— it cannot be said that the sureties contracted with reference to the view of the law taken by the Federal courts. They knew that the obligation was enforceable in the courts of the State of which the plaintiff and defendants were all residents, and that the highest court of that State had consistently held that counsel fees were recoverable upon an injunction bond. That the bond was given in a Federal court, where a different rule of interpretation obtains, has not been deemed to affect the state court in determining the liability upon such bond when suit was brought thereon. *Mitchell* v. *Hawley*, 79 California, 301; *Hannibal & St. Joseph Railroad* v. *Shepley*, 1 Mo. App.

254; *Wash.* v. *Lackland,* 8 Mo. App. 122; *Aiken* v. *Leathers,* 40 La. Ann. 23; *Corcoran* v. *Judson,* 24 N. Y. 106."

In addition to *Corcoran* v. *Judson,* 24 N. Y. 106, cited by the state court, see *Coates* v. *Coates,* 1 Duer, 664; *Edwards* v. *Bodine,* 11 Paige, 223, and Sedgwick on Damages, 177; also, *Barton* v. *Fisk,* 30 N. Y. 166, 171; *Behrens* v. *McKenzie,* 23 Iowa, 333, 342; *Ford* v. *Loomis,* 62 Iowa, 566, 588; *Cook* v. *Chapman,* 41 N. J. Eq. 152, 154; *Noble* v. *Arnold,* 23 Ohio St. 264, 270; *Morris* v. *Price,* 2 Blackf. 457; *Derry Bank* v. *Heath,* 45 N. H. 524; *Ryan* v. *Anderson,* 25 Ill. 372; *Garrett* v. *Logan,* 19 Alabama, 344.

At the second trial Mulvane obtained a verdict and judgment which embraced his counsel fees in the injunction suit, and that judgment having been affirmed by the Supreme Court of Kansas, (61 Kansas, 650,) it is sought to have it reviewed by this court, under section 709 of the Revised Statutes, upon the ground that by the action of the Supreme Court of Kansas the plaintiff in error, Tullock, was denied an " immunity " belonging to him under an " *authority* exercised under the United States." The *immunity* so claimed is that he, Tullock, was erroneously held to be liable for the attorneys' fees which the obligee in such bond paid or became bound to pay in or about obtaining or dissolving the injunction in the suit in the Federal court.

Can this court review the action of the state court upon any such a question ? Is it true that the alleged " immunity" arises from an " *authority* exercised under the United States ? "

In *Avery* v. *Popper,* 179 U. S. 305, 314, 315, this court, speaking by Mr. Justice Brown, said : " With respect to writs of error from this court to judgments of state courts in actions between purchasers under judicial proceedings in the Federal courts and parties making adverse claims to the property sold, the true rule to be deduced from these authorities is this : That the writ will lie, if the validity or construction of the judgment of the Federal court, or the regularity of the proceedings under the execution, are assailed ; but if it be admitted that the judgment was valid, and those proceedings were regular, that the purchaser took the title of the defendant in the execution, and the issue relates to the title to the property, as between the defendant

in the execution or the purchaser under it, and the party making the adverse claim, no Federal question is presented—in other words, it must appear that the decision was made against a right claimed under Federal *authority*, in the language of Rev. Stat. § 709." Again: "This was a question either of local law or of general law. If of local law, of course the decision of the Supreme Court of Texas is binding upon us. If of general law, as it involves no Federal element, it is equally binding in this proceeding, since only Federal rights are capable of being raised upon writs of error to state courts. Conceding that, if the question had arisen on appeal from a Circuit Court of the United States, we might have come to a different conclusion, it by no means follows that we can do so upon a writ of error to a state court, whose opinion upon a question of general law is not reviewable here."

Surely this case does not involve a Federal immunity simply because the bond in suit was taken under the authority of the Circuit Court of the United States. If it does, then this court erred in its decision in *Provident Savings Society* v. *Ford*, 114 U. S. 635, (reaffirmed in many subsequent cases,) in which it was contended that a suit upon a judgment rendered by a Federal court necessarily involved questions arising under the laws of the United States. That contention was overruled. This court, speaking by Mr. Justice Bradley, said: "What is a judgment, but a security of record showing a debt due from one person to another? It is as much a mere security as a treasury note, or a bond of the United States. If A brings an action against B, trover or otherwise, for the withholding of such securities, it is not therefore a case arising under the laws of the United States, although the whole value of the securities depends upon the fact of their being the obligations of the United States. So if A have title to land by patent of the United States and brings an action against B for trespass or waste, committed by cutting timber, or by mining and carrying away precious ores, or the like, it is not therefore a case arising under the laws of the United States. It is simply the case of an ordinary right of property sought to be enforced. A suit on a judgment is nothing more, unless some question is raised in the case (as might

be raised in any of the cases specified), distinctly involving the laws of the United States—such a question, for example, as was ineffectually attempted to be raised by the defendant in this case. If such a question were raised, then it is conceded it would be a case arising under the laws of the United States."

In *Blackburn* v. *Portland Gold Mining Co.,* 175 U. S. 571, it was held that the judgment of the Supreme Court of a State could not be reviewed simply because the case involved a contest between rival claimants of a mine under certain sections of the Revised Statutes. To the same effect are *Florida Central & Peninsular Railroad Co.* v. *Bell,* 176 U. S. 321; *De Lamar's Mining Co.* v. *Nesbitt,* 177 U. S. 523; *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505.

There is no question in this case as to the validity of any authority exercised under the United States. The only question is as to the rights of one party and the liabilities of the other party under an ordinary injunction bond. What those rights and liabilities are cannot be determined by reference to the Constitution or any statute of the United States. Nor has any rule been adopted by the Circuit Court of the United States limiting the legal effect of the words of the bond or declaring what damages should be covered by it. Of course, if Congress had enacted a statute prescribing the form of injunction bonds, and directing what liabilities should arise thereon against the obligors, that statute would control. But no such statute has been passed, and the question is left to be determined by the principles of general law.

Reference has been made to *Oelrichs* v. *Spain,* 15 Wall. 211, in support of the proposition that the question presents an "immunity" which exists under Federal authority. That case was brought in a Circuit Court of the United States. It does decide that attorneys' fee should not be allowed in a suit on injunction bonds. But there is in the opinion no hint even that the decision as to what damages can be allowed in such a suit rests upon a Federal ground. On the contrary, the court, after citing some authorities, says that "the principle of disallowance rests on a solid foundation, and that the opposite view is forbidden by the analogies of the law and sound policy."

We have been referred also to Equity Rule 90 of this court, which declares that "the practice of the Circuit Court shall be regulated by the present practice of the High Court of Chancery in England, so far as the same may be reasonably applied consistently with the local circumstances and local convenience of the district where the court is held, not as positive rules, but as furnishing just analogies to regulate the practice." I cannot perceive that this rule has any pertinency, as it relates merely to *practice,* and not to the principles of law by which the rights and obligations of parties to injunction bonds are determinable.

*Bein* v. *Heath,* 12 How. 168, 178, has been cited as showing that in allowing attorneys' fees the state court invaded a Federal right. That was a suit in the Circuit Court of the United States on an injunction bond taken in the same court. The trial court determined the case according to a statute of Louisiana defining the rights and obligations of the parties. This court held that "in proceeding upon such a bond, the court would have no authority to apply to it the *legislative* provisions of the State. The obligors would be answerable for any damage or cost which the adverse party sustained, by reason of the injunction, from the time it was issued until it was dissolved, but to nothing more. They would certainly not be liable for any aggravated interest on the debt, nor for the debt itself, unless it was lost by the delay, nor for the fees paid to the counsel for conducting the suit." Absolutely nothing is to be found in the opinion of the court sustaining the proposition that the rights and obligations of the parties to an injunction bond are determinable upon any principle of a *Federal* nature. The court referred to the 90th and 8th Equity rules, as furnishing authority for the *taking* of injunction bonds, but took care to say that those rules relate only to "forms of proceeding and mode of practice," and not to "the rights and obligations of parties to injunction bonds." And what was said in that case touching the rights and obligations of parties to injunction bonds was an expression of the views of the state court as to the general principles of law applicable in such cases. This is apparent from the extract given in the opinion of the court

from the opinion in *Bein* v. *Heath.* In *Meyers* v. *Block,* cited in the opinion in this case, 120 U. S. 206, 211, the court said that there was no question " as to the power of a court of equity to impose any terms in its discretion as a condition of granting or continuing an injunction." *Russell* v. *Farley,* 105 U. S. 433. Consequently the terms being prescribed, their meaning, in the absence of a statute, depends upon general, not Federal law.

Cases have been cited which show that this court can re-examine the final judgment of the highest court of a State which fails to give due effect to a judgment, decree or order of a court of the United States. But such cases have no pertinency to the present discussion; for in the present case the state court did not disregard any judgment, decree or *order* of the Federal court. It did nothing more than enforce its views as to the rights and obligations of parties under a bond theretofore taken in a suit in a Federal court.

*Meyers* v. *Block,* cited in the opinion, shows that our jurisdiction in that case was maintained solely because the case involved the question whether the injunction bonds there in suit were in conformity with the order of the Federal court in which they were taken.

In *N. Y. Life Ins. Co.* v. *Hendren,* 92 U. S. 287, which was brought here from the highest court of Virginia, it was said : " The case, therefore, having been presented to the court below for decision upon principles of general law alone, and it nowhere appearing that the Constitution, laws, treaties or executive proclamations of the United States were necessarily involved in the decision, we have no jurisdiction." In *United States* v. *Thompson,* 93 U. S. 586, which came here from the highest court of Maryland, and in which suit the United States was a party, seeking payment of a debt it held against an insolvent partnership, the court said : "It is not contended that this decision is repugnant to the Constitution, or any law or treaty of the United States; but the argument is, that, as the check of McFreely & Hopper was not paid, it did not pay their debt. Whether this is so or not does not depend upon any statute of the United States, but upon the principles of general law alone. We have

many times held that we have no power to review the decisions of the State courts upon such questions. *Bethel* v. *Demaret*, 10 Wall. 537; *Delmas* v. *Ins. Co.*, 14 Wall. 666; *Ins. Co.* v. *Hendren*, 92 U. S. 287; *Rockhold* v. *Rockhold*, 92 U. S. 130." In *San Francisco* v. *Scott*, 111 U. S. 268, referring to the question as to the effect of an alcalde grant of the pueblo title, and which was decided by the Supreme Court of California, it was said: " This does not depend on any legislation of Congress, or on the terms of the treaty, but on the effect of the conquest upon the powers of local government in the pueblo under the Mexican laws. That is a question of general public law, as to which the decisions of the state court are not reviewable here. This has been many times decided."

Let it be observed that the jurisdiction of the state court, as between the parties and as to the subject-matter, is not disputed. The question before it was as to the extent of the liability of the sureties in the injunction bond. The decision of that question did not depend, in any degree, upon the Constitution or statutes of the United States. It depended entirely upon the meaning of the words of the bond, and the principles of law applicable to such an instrument. It was manifestly, therefore, a question of general law as distinguished from Federal law. Upon such a question the state court was entitled to give effect to its own views. The question could not become a question of Federal law by reason alone of the fact that the bond was executed under the authority of the Circuit Court; for, as already said, neither the *order* under which the bond was taken, the validity of the bond nor the authority of the court was disputed. Nor could it become a Federal question because of any decision by this court in cases theretofore decided between other parties. Suppose this court had not, prior to the trial of this case, expressed any opinion upon that question of general law. Could it then have been contended that the judgment complained of denied any Federal immunity? If not, then the Federal immunity now claimed arises entirely from the failure of the state court to take the same view of a question of general law which this court took in prior cases between other parties. There has been a wide difference of opinion between this court and some of the state

courts upon certain questions of general law. But it has never been supposed that any one has such a vested interest in the views of this court upon questions of general law that he may complain of the refusal of a state court to accept those views as denying him an "immunity" existing or belonging to him, in virtue of an "authority exercised under the United States." In *Winona & St. Peter Railroad* v. *Plainview*, 143 U. S. 371, 390, which came to this court from the highest court of Minnesota, it was said: "The fact that the Supreme Court of Minnesota, in the present cases, did not acquiesce in the correctness of the decision of the Circuit Court of the United States, did not constitute a Federal question. Neither the Constitution of the United States nor any act of Congress guarantees to a suitor that the same rule of law shall be applied to him by a state court which would be applied if his citizenship were such that his suit might be brought in a Federal court."

Or, suppose two actions were brought in the Federal court (there being diversity of citizenship in each case) one on an injunction bond executed in a Circuit Court of the United States, and the other upon a like bond executed in a state court. What would be the ruling as to the measure of damages? Would the court disallow counsel fees in the first case and allow them in the second case where the highest court of the State had established the principle that counsel fees could be recovered? Each branch of the latter question must, upon the principles of the opinion just delivered, be answered in the affirmative. But they cannot be so answered without placing the decisions of the courts upon a question of general law, on the same basis as a legislative enactment prescribing the measure of damages in suits on injunction bonds.

Being unable to assent to the principle that a Federal immunity arises when a state court, in determining a question not involving the Constitution or laws of the United States nor the validity of an authority exercised under the United States, reaches a conclusion upon a question of general law different from that announced in prior cases by this court and denying our authority to compel a state court to disregard its own views

upon a question of general law, I am constrained to dissent from the opinion and judgment.

MR. CHIEF JUSTICE FULLER and MR. JUSTICE BROWN concur in this opinion.