## FLETCHER ET AL V. MENKEN ET AL.

1. JUDGMENTS: *Summary, against sureties in attachment cases.*
By executing the delivery bond in attachment cases, provided for by *Sec.* 406 *Gantt's Digest,* the sureties become parties to the suit, and subject to summary judgment in the action, without service of notice or process upon them.

2. SAME: *For what amount on forthcoming bonds in attachment.*
The judgment against sureties on a forthcoming bond, provided for in *Sec.* 406 *Gantt's Digest,* must be for the value of the property, as found by the court or jury trying the case, and not the value fixed by the appraisers for taking the bond.

3. ATTACHMENTS: *Liability of surety on cross-bond and surety on the debt. Priority.*
When in an action against the principal and sureties in a note, the property of the principal is attached, and he executes a cross-bond with sureties, as provided by *Sec.* 406 *Gantt's Digest,* such sureties are, as between them and the sureties on the note, primarily liable to the extent of the value of the property attached, for the satisfaction of the debt.

4. PRACTICE IN SUPREME COURT: *Objection for want of bond in attachment suit; Affidavit insufficient.*
The defendant in an attachment suit cannot object here for the first time, that no bond was filed by the plaintiff before the writ of attachment was issued. Nor can he object here for the first time, that the affidavit for the attachment was insufficient. Such objections must first be made in the Circuit Court.

APPEAL from *Pulaski* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.

*N. & J. Erb,* for appellants:

I.   The signature of appellants to the cross-bond, *after* it had been accepted, and the property restored "was unwarranted by law, and should not have been allowed. Delivery was as essential as signing, and when they signed the

Fletcher et al v. Menken et al.

bond, it had already been delivered, and there was, in fact, no delivery by them." *Hynes* v. *Dickinson*, 32 *Ark.*, 777; see also, *Dudley* v. *Goodrich*, 16 *How. Prac.*, 189; *Hartford Q. Co.* v. *Pendleton*, 4 *Abb. Prac.*, 40.

II. The value stated in the bond was conclusive on the court. *Drake on Attachment*, 5 *Ed.*, sec. 342.

III. Probst & Hilb were principal defendants, and should have been proceeded against first. *Page* v. *Long*, 4 *B. Mon.*, 121; *Goodman* v. *Allen*, 6 *La. Ann.*, 371.

The Act of November 10, 1875, expressly directs that execution shall be issued against the main defendant before it can be issued against the sureties. The act certainly contemplates that the remedy shall be exhausted against *all* the defendants before proceeding against the sureties.

*Cohn & Cohn*, for appellees:

Probst & Hilb's rights were superior to appellants'. *Brandt. on Guar. and Suretyship*, sec. 406.

The appraisement was had for the purpose of fixing the amount of the bond, and was not conclusive evidence of value. *Acts, adjourned sess.* 1875, *p.* 7, 8.

Appellants cannot object, in this court, for the first time, to the form of the affidavit, or that the record does not show that a bond was given before the writ of attachment issued.

ENGLISH, C. J. Menken Bros. & Co. brought this action in the Pulaski Circuit Court, against Hersh Jacobi and Amelia Jacobi, as makers of a note, and Probst & Hilb, as endorsers.

The note was for $375, dated, Little Rock., Sept. 15, 1876, payable six months after date, to the order of Probst & Hilb, at the German bank, and by them endorsed.

It appears that with the complaint, plaintiffs filed an affidavit, stating, in substance, that the claim in the action against Hersh and Amelia Jacobi was for money due upon a promissory note ; that it was a just claim ; that they ought, as they believed, to recover thereon $375, principal, interest, etc. ; and that said defendants had made, and were making, a fraudulent disposition of their property, with intent to cheat, hinder and delay their creditors, etc.

Upon this affidavit, etc., an attachment was issued against the property of Hirsh and Amelia Jacobi, levied by the sheriff on merchandise belonging to them, which was appraised at $450, and a bond executed by Hersh Jacobi as principal, and M. Stern, Caroline Stern, Richard Fletcher and John Barron, as sureties for the delivery of the property, etc.

Neither Hersh and Amelia Jacobi nor Probst & Hilb made any defense to the *personam* feature of the action, and judgment was rendered against them on the note for $375 debt, $50.04 damages, and for costs, and that plaintiff's have execution thereof.

But Hersh and Amelia Jacobi traversed the truth of the affidavit upon which the writ of attachment was sued out against their property, and on trial before the court the issue was found against them ; and the court also found the value of the property attached, and rendered judgment against the sureties in the cross bond as provided by the Act of Nov. 10th, 1875 (*Acts of* 1875, *p.* 8). Fletcher and Barron, two of the sureties, filed a motion to set aside this judgment, which was overruled. They then filed a motion to modify the judgment, which was also overruled, and without taking any bill of exceptions they appealed.

I. The motion of appellants to set aside the judgment against them on the cross-bond, was on the following grounds :

1st.   That the court had no jurisdiction of their persons —that they were not served with process in the action, did not appear, nor consent to the judgment, and it was rendered without their knowledge.

2nd.   That they did not, nor did either of them, execute the bond on which the judgment was rendered against them, and were not liable thereon.

To this motion was attached the affidavit of Richard Fletcher, stating " that Fletcher and Barron never delivered the delivery bond herein to the sheriff or any other officer of the court; that they signed a certain delivery bond many weeks after the goods attached in the suit had been returned to the defendant, Hersh Jacobi, by virtue of the delivery bond aforesaid. That said bond had been executed and delivered to the sheriff by said Hersh Jacobi, M. Stern and Caroline Stern, on November 27th, 1879, many weeks before affiants signed the same, and which was some time in February, 1878, and that said sheriff had accepted said bond, and delivered the property to said Jacobi."

1st.   The bond was taken under section 406 of *Gantt's Digest*, and after the passage of the Act of November 10th, 1875, providing for summary judgment in the attachment suit against the sureties in such bond. By executing the bond, the sureties, became parties to the suit, and the statute provides for no process or notice to them before judgment.   *White* v. *Prigmore* 29 *Ark.*, 208; *Callahan et al* v. *Saleski*, *Ib.*, 216.

2d.   In the motion appellants stated that they did not execute the bond. In the affidavit of Fletcher in support of the motion, it was admitted that they signed the bond, but an attempt was made to show a want of consideration, by the statement, in effect, that they signed it after it had been executed by Hersh Jacobi, the principal, and two sureties,

1. JUDG-
MENTS:
Summa-
ry, against
sureties in
attach-
ment ca-
ses.

14—37

accepted by the sheriff, and the goods attached, returned to Jacobi.

What evidence was before the court, on the hearing of the motion, appellants failed to show by bill of exceptions.

The sheriff in his return upon the writ of attachment states that he executed the writ "by taking possession of the stock of goods and merchandize of defendants H. and Amelia Jacobi, found in their place of business on Main Street, etc., in Little Rock. That thereupon, on demand of said defendants I summoned three disinterested householders, etc., to appraise said stock according to law. Said appraisement and a statement in detail of said stock are herewith returned marked exhibit A. The defendants thereupon executed cross-bond with M. Stern, Caroline Stern, Richard Fletcher and John Barron, as sureties, in the sum of nine hundred dollars, which bond is herewith returned, and I thereupon released said stock to said H. and Amelia Jacobi, etc."

2. SAME: For what amount in forthcoming bonds, in attachments.

II. After the court had sustained the attachment on trial of the issue made to the truth of plaintiff's affidavit by defendants Hersh and Amelia Jacobi, it proceeded to render judgment against the sureties in the cross-bond as follows:

"And it being shown to the court that defendants have given a bond herein under *section 406 of Gantt's Digest*, with M. Stern, Caroline Stern, Richard Fletcher and John Barron, as their sureties, and the court, on demand of the plaintiff's having found that the value of the property herein attached equals the amount of the debt, damages and costs, it is further considered, ordered and adjudged that said plaintiff's have and recover from said M. Stern, Caroline Stern, Richard Fletcher and John Barron, sureties as aforesaid for the amount of their said debt, damages and costs; and that in case of the property attached herein, and described in the return of the sheriff, etc., on the writ

of attachment, etc., be not delivered up by said defendants, or some person for them, to the said officer, to be sold, and it shall appear by the return of the said officer to a writ of execution issued against the property of said Hersh Jacobi and Amelia Jacobi, that the same is unsatisfied in whole or in part, that then, in that case, this judgment may be enforced against said sureties, and execution may then issue herein against the property of said sureties for so much of this judgment as shall not exceed the value of said property, and shall remain unsatisfied after a return of execution against the property of said Hersh Jacobi and Amelia, as aforesaid."

Appellants moved to modify this judgment as follows:

" *First.* That their liabilities be limited to the value of the property, as expressed in the delivery bond herein, to-wit: The sum of $400.

" *Second.* That plaintiffs be required to exhaust their remedy by execution against Probst & Hilb, as well as against said Hersh and Amelia Jacobi before execution be issued against them.

"*Third.* That in no event should their liability exceed the value of the property attached as expressed in the sheriff's official appraisement.

The *first* and *third* grounds of the motion may be considered together.

The goods attached were appraised by the three persons selected by the sheriff (John Barron being one of them) at $450, as shown by the sheriff's return. The body of the cross bond follows.

"We undertake and are bound to the plaintiffs, Menkin Bros., in the sum of nine hundred dollars, conditioned that defendant, Hersh Jacobi, shall have the property attached in this action a schedule whereof is hereto annexed, marked Exhibit A., or its value, to-wit: the sum

of four hundred    dollars,  forthcoming,  and    subject  to·
the orders of the court for the satisfaction of  the judgment,
in this case.''

The bond was signed by H. Jacobi and the four sure-
ties.

The schedule of the goods and appraisement annexed to·
the bond show that the goods were.valued at $450, and not.
$400, as recited in the bond, which recital was evidently a,
clerical error.

The debt and damages adjudged against the original de-
fendants amounted to $425.04 ; less, by nearly $25, than the·
appraised value  of the goods, and leaving  the last named
·sum as margin for costs.   What the costs were is not shown,.
and so appellants have failed to make  it appear  upon the·
record before us that the judgment against them exceeded
the appraised value of the goods attached.

Value of    But the court below, in rendering judgment ·against the
appraisers, not sureties in the bond, was not obliged to take the value fixed.
conclusive  upon the goods by the appraisers as conclusive.

It was the  duty of  the sheriff to take the bond in double
the  value of  the property attached ; and .the appraisement.
which the Statute requires him to cause to be  made, is for·
the purpose of enabling him  to fix  the amount of  the bond
( *Gantt's Digest, secs.* 406–7), which in this case, he fixed at
$900, being double the appraised value of the goods.

But the act of November 10th, 1875, provides :

" But if the defendant [in  the attachment] shall have
given bond for the retention of  the property attached, as
provided by section four hundred and six (406), of *Gantt's
Digest,* and the attachment shall be sustained, the court or
jury, in addition to finding  the amount of  the debt or dam-
ages due to the plaintiff, shall, upon demand of the plaintiff,
also *assess the value of the property attached;* and the court
shall, in addition to judgment against said defendant for· the

Fletcher et al v. Menken et al.

amount found due to the plaintiff, and costs, render further judgment, that in case said property shall not be delivered up to the proper officer to be sold, and said officer shall not be able to make said judgment out of the property of said defendant, execution shall then issue against the property of said sureties for so much of said judgment as shall not exceed the value of said property, which execution shall be enforced as in other cases."

In this case, after sustaining the attachment, the court proceeded, in accordance with the Statute, to assess the value of the property attached, and found it to be equal to the amount of the debt, damages and costs adjudged against the original defendants, and then rendered judgment against the sureties in the cross bond as required by the Statute.

Upon what evidence the court assessed the value of the property the record entry does not show, nor was it its province to show. Appellants might have shown that by bill of exceptions, had they paid attention to the suit after they became parties to it by signing the bond.

As to the *second* ground of the motion to modify the judgment:

3. ATTACH-
MENTS:
Liability
of sureties
on cross-
bond and
on the
debt. Pri-
ority.

We know nothing of the note in suit, except what appears upon its face, and the endorsement upon it. Hersh and Amelia Jacobi were the makers of the note. It was made payable to the order of Probst & Hilb, by them endorsed in blank, and, as the complaint alleged, delivered to plaintiffs for value. The makers and endorsers were all primarily liable to the plaintiffs. But if the plaintiffs had sued the endorsers and made the debt out of them, or if they had paid it voluntarily, they could have gone upon the makers for indemnity. As between the makers and the endorsers, the latter were, therefore, secondarily liable.

As to Probst & Hilb, the suit was an ordinary action in *personam;* no attachment was sued out against their proper-

ty—they were not defendants in the attachment branch of the suit.   The attachment was against the property of Hersh and Amelia Jacobi ; and their goods, sufficient in value to satisfy the debt, etc., were attached.   But for the interference of appellants and their co-securities in the cross bond, the goods might have remained in the hands of the sheriff, been condemned, and sold to satisfy the judgment on the note, and thereby Probst & Hilb would have been saved harmless. But appellants, by becoming sureties, not of Probst & Hilb, but of Jacobi, procured the release of the goods.   They bound themselves, by the bond, that their principal should deliver the goods in satisfaction of the judgment in the suit. Now they submit that the court below should have modified its judgment against them so that should the goods not be delivered, plaintiffs should be required to exhaust their remedy, by execution, not only against Hersh and Amelia Jacobi, the only defendants in the attachment, and whose goods were attached and released upon the bond, but against Probst & Hilb, before resorting to them for the value of the goods.   Such a modification of the judgment would have been manifestly unjust to Probst & Hilb.

The court, in rendering the judgment against the sureties in the cross bond and refusing to modify it as moved by appellants, properly looked not only to the fact that Hersh and Amelia Jacobi were the only defendants in the attachment branch of the suit, and that their goods were attached and released on the bond, but noticed the further fact, apparent upon the note in suit, that they were primarily liable for the debt, and Probst & Hilb secondarily liable as between themselves.   In rendering the judgment in *personam* against the original defendants on the note, however, the court also properly treated Hersh and Amelia Jacobi, the makers, and Probst & Hilb, the endorsers, as all primarily liable to the plaintiffs, and provided in the judgment that they might

have execution thereof, thereby preserving their legal right.

III. Counsel for appellants have made the point here that the transcript fails to show that appellees filed a bond before the writ of attachment issued. If no bond was in fact filed, this might have been pleaded in abatement of the writ of attachment in the court below, but it is bad practice to allow the objection to be taken here for the first time. The defendants in the attachment would hardly have traversed the truth of the affidavit and had a trial upon that issue, if no bond had been filed. It was the duty of the clerk to take a bond before issuing the writ; and it is probable that he did; but in making out the transcript omitted to include it, as no question was made about it in the court below.

*4. PRACTICE IN SUPREME COURT: No bond in attachment suit.*

IV. So counsel for appellants have objected here, for the first time, to the form of the affidavit. Any such objections should have been made in the court below, where appellees could have been permitted to amend the affidavit, if found to be defective in form.

*Affidavit insufficient.*

Affirmed.