## FILES v. DAVIS.

### (Circuit Court, E. D. Arkansas, W. D. November 12, 1902.)

**1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—ACTION ON ATTACHMENT BOND.**

An action on an attachment bond executed in a suit pending in a national court presents a federal question, within the meaning of the judiciary act, and is within the jurisdiction of a federal court, where the requisite amount is involved, regardless of the citizenship of the parties; the effect of Rev. St. § 915 [U. S. Comp. St. 1901, p. 684], giving the same remedies by attachment in common-law causes in the circuit and district courts as are provided by the laws of the state in which such courts are held, being to make the state statutes in that regard laws of the United States.

**2. SAME—ANCILLARY SUITS.**

An action on an attachment bond executed in a suit pending in a federal court is ancillary to the action in which the bond was given, and may be maintained in the same court, without regard to the citizenship of the parties or the amount involved.

At Law. On demurrer to the jurisdiction.

George Scott, a citizen of Missouri, instituted in this court an action at law against A. P. Simms, W. F. Files, and the plaintiff in this case, J. T. Files, to recover money alleged to be due him from these parties, whom he charged to be partners. At the commencement of that suit he procured the issuance of a writ of attachment against the property of all the defendants, having filed the necessary affidavit and the bond as required by law, with William Farrell, who has since died intestate and the administrator of whose estate the defendant Davis is, as surety. The marshal executed the writ of attachment by seizing a stock of merchandise alleged to have been owned by and in the possession of the plaintiff in this action. Pending the attachment proceedings, the merchandise was, by order of the court, sold by the marshal, and the proceeds, less the costs of sale, deposited in the registry of the court. The original suit resulted in a final judgment of dismissal as to this plaintiff, and he thereupon instituted this action on the attachment bond, claiming $9,500 damages alleged to have been sustained by him by reason of the wrongful seizure of his property under the writ of attachment. The complaint fails to show any diversity of citizenship of the parties, and the defendant demurs upon that ground to the jurisdiction of the court.

Rose, Hemingway & Rose and A. W. Files, for plaintiff.

Ratcliffe & Fletcher and J. A. Watkins, for defendant.

TRIEBER, District Judge. There being no diversity of citizenship alleged in the complaint, the jurisdiction of this court can only be maintained upon the ground that the issues involve a federal question, or that this action is merely ancillary to the original attachment suit.

1. Does an action on an attachment bond executed in a suit pending in a national court present a federal question, within the meaning of

¶ 1. Jurisdiction of federal courts in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308.

¶ 2. Supplementary and ancillary proceedings and relief, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

118 F.—30

the judiciary act? Section. 6 of the act of congress of June 1, 1872 (17 Stat. 197; section 915, Rev. St. U. S.),[1] is as follows:

"In common-law causes in the circuit and district courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which are now provided by the laws of the state in which such court is held for the courts thereof; and such circuit or district courts may, from time to time, by general rules, adopt such state laws as may be in force in the states where they are held in relation to attachments and other process: provided, that similar preliminary affidavits or proofs, and similar security, as required by such state laws, shall be first furnished by the party seeking such attachment or other remedy."

If the effect of this act is to make the statutes of the state regulating the affidavit and bond in attachment proceedings laws of the United States for the national courts within such state, then the jurisdiction of this court is beyond question, for plaintiff's cause of action would then be arising under the laws of the United States. Upon this ground it is now well settled that suits on bonds of the United States marshals and other federal officers are actions arising under the national laws and within the jurisdiction of the national courts. Feibelman v. Packard, 109 U. S. 421, 3 Sup. Ct. 421, 27 L. Ed. 984; Backrack v. Norton, 132 U. S. 337, 10 Sup. Ct. 106, 33 L. Ed. 377; Bock v. Perkins, 139 U. S. 628, 11 Sup. Ct. 677, 35 L. Ed. 314. An action by an internal revenue collector on the bond of his deputy may be maintained in the national courts, upon the ground that it is an action arising under the laws of the United States. Orner v. Saunders, 3 Dill. 284, Fed. Cas. No. 10,584. So it is also the settled law that actions by or against corporations created by an act of congress may be maintained in the national courts solely upon that ground, which it is held makes the suit one arising under the constitution and laws of the United States. Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Supreme Lodge K. P. v. England, 36 C. C. A. 298, 94 Fed. 369.

Congress has frequently adopted by reference the statutes of the states as national laws, or as laws for a territory for which congress legislated directly. The act of May 17, 1884 (23 Stat. 24), providing for a civil government for Alaska, adopted the laws of the state of Oregon as the laws of that territory. The various acts establishing the national courts for the Indian Territory (25 Stat. 783, 26 Stat. 81, and 28 Stat. 693) adopted certain laws of the state of Arkansas as laws for that territory. The conformity act of June 1, 1872 (17 Stat. 197), the act prescribing the competency of witnesses in civil actions pending in the national courts (13 Stat. 351; section 858, Rev. St. U. S.),[2] the national election laws (Acts May 31, 1870, 16 Stat. 145), and numerous other acts adopt certain laws of the states as national laws, and they have uniformly been sustained as a valid exercise of the constitutional powers of congress, and enforceable in the national courts as laws of the United States.

Perhaps the most important case on that subject is Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717, a case arising under the national election laws. It was there urged that, while congress had the power

[1] U. S. Comp. St. 1901, p. 684.    [2] Id. p. 659.

to assume the entire regulation of the election of representatives to congress, it had no constitutional power to make partial regulations intended to be carried out with regulations made by the states. But this contention was overruled by the court, the court saying:

"The objection that the laws and regulations, the violation of which is made punishable by the acts of congress, are state laws, and have not been adopted by congress, is no sufficient answer to the power of congress to impose punishment. It is true that congress has not deemed it necessary to interfere with the duties of the ordinary officers of election, but has been content to leave them as prescribed by state laws. It has only created additional sanctions for their performance, and provided means of supervision in order more effectually to secure such performance. The imposition of punishment implies a prohibition of the act punished. The state laws which congress sees no occasion to alter, but which it allows to stand, are, in effect, adopted by congress. It simply demands their fulfillment. Content to leave the laws as they are, it is not content with the means provided for their enforcement. It provides additional means for that purpose, and we think it is entirely within its constitutional power to do so. It is simply the exercise of the power to make additional regulations." 100 U. S. 388, 25 L. Ed. 717.

In Ex parte Clarke, 100 U. S. 399, 25 L. Ed. 715, the same question was before the court. Clarke had been convicted in the national courts under the federal election laws for a violation of the state laws of Ohio in not conveying the ballot box, after it had been sealed and delivered to him for that purpose, to the county clerk, and the judgment of conviction was sustained. To the same effect are U. S. v. Gale, 109 U. S. 66, 3 Sup. Ct. 1, 27 L. Ed. 857; In re Coy, 127 U. S. 743, 8 Sup. Ct. 731, 32 L. Ed. 274; Ex parte Yarbrough, 110 U. S. 655, 4 Sup. Ct. 152, 28 L. Ed. 274; Swafford v. Templeton, 185 U. S. 487, 22 Sup. Ct. 783, 46 L. Ed. 1005. In Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708, it was held that the provisions of a state law disqualifying certain persons from testifying as witnesses are obligatory upon the national courts acting within that state by virtue of section 721, Rev. St. U. S.,[3] adopting the laws of the several states as rules of decision in trials at common law in the national courts. The act of March 3, 1825 (4 Stat. 115; section 5391, Rev. St.),[4] adopts the criminal laws of the state for offenses committed in any place under the jurisdiction of the United States, which are not provided for by any law of the United States, and this has been held to make the state laws the same as if the act of congress had defined the offenses in the very words of the state laws. U. S. v. Coppersmith (C. C.) 4 Fed. 198, 205; Sharon v. Hill (C. C.) 24 Fed. 726. In Amy v. City of Watertown, 130 U. S. 301, 9 Sup. Ct. 530, 32 L. Ed. 946, the court, in construing the conformity act of 1872 (section 914, Rev. St. U. S.),[5] say:

"But the statute of 1872 is peremptory, and whatever belongs to the three categories of practice, pleading, and forms and modes of proceeding must conform to the state law and the practice of the state courts, except where congress itself has legislated upon a particular subject and prescribed a rule."

To the same effect is Rush v. Newman, 7 C. C. A. 136, 58 Fed. 158.

For the same reason, the statutes of a state providing that, in actions of ejectment, the unsuccessful party shall be entitled to one

[3] U. S. Comp. St. 1901, p. 581.　　[4] Id. p. 3651.　　[5] Id. p. 684.

new trial as a matter of course, have been held binding on the national courts held within such state. Smelting Co. v. Hall, 106 U. S. 86, 1 Sup. Ct. 128, 27 L. Ed. 114; Smale v. Mitchell, 143 U. S. 99, 12 Sup. Ct. 353, 36 L. Ed. 90; Mining Co. v. Campbell, 10 C. C. A. 172, 61 Fed. 932.

In Sowles v. Witters (C. C.) 46 Fed. 497, that part of the conformity act of 1872 digested as section 916, Rev. St.,[6] was before the court, and the learned judge who delivered the opinion, after quoting from the opinion of the supreme court in Ex parte Siebold, supra, concluded:

"This reasoning shows that, when a state law is adopted by or under the authority of congress, it becomes a law of the United States, and that a suit arising under such law arises under the laws of the United States." 46 Fed. 499.

In Seymour v. Const. Co., 7 Biss. 460, Fed. Cas. No. 12,689, the action was to recover on a supersedeas bond given in a proceeding pending in a national court, and it was held to be within the jurisdiction of the federal court regardless of the citizenship of the parties, upon the ground that the cause of action was one arising under the laws of the United States. Even regulations made by the head of a department, in pursuance of authority granted by an act of congress, have been held to have the force and effect of a statute of the United States. U. S. v. Bailey, 9 Pet. 238, 9 L. Ed. 113; Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; In re Kollock, 165 U. S. 533, 17 Sup. Ct. 444, 41 L. Ed. 813.

The same question was before the court in Cooke v. Avery, 147 U. S. 375, 13 Sup. Ct. 340, 37 L. Ed. 209. The jurisdiction of the circuit court in that case was invoked because a right was claimed under that part of the conformity act of 1872, digested as section 916, Rev. St.[6] The claim of plaintiffs in that case was that certain judgments of the federal court of Texas were liens on the real estate of the judgment debtor by virtue of the provisions of section 916, Rev. St.,[6] and that for this reason the action arose under the laws of the United States and the rules of the circuit court, and that the circuit court had jurisdiction thereof, regardless of the citizenship of the parties thereto. The chief justice, who delivered the opinion of the court, disposes of this question, after a careful review of the authorities, by saying:

"It is unnecessary to pursue this branch of the case further. Plaintiff is to be regarded as the purchaser at the sale, and the validity of his purchase turned upon the existence of a lien, which he asserted and the defendants denied. The disposition of this issue depended upon the laws of the United States and the rules of the circuit court, and their construction and application were directly involved. We are of opinion that jurisdiction as resting on the subject-matter was properly invoked." 147 U. S. 390, 13 Sup. Ct. 346, 37 L. Ed. 209.

Actions on bonds executed in injunction proceedings pending in a national court may be maintained in this court as arising under the laws of the United States. Meyers v. Block, 120 U. S. 206, 7 Sup. Ct. 525, 30 L. Ed. 642; Tullock v. Mulvane, 184 U. S. 497, 22 Sup. Ct. 372, 46 L. Ed. 657; Railway Co. v. Elliott, 184 U. S. 530, 22 Sup. Ct. 446, 46 L. Ed. 673.

[6] U. S. Comp. St. 1901, p. 684.

But it is contended by learned counsel for defendant that these last-cited cases do not apply to the circuit court, but only to the appellate jurisdiction of the supreme court on error to the supreme court of a state. It is true that the jurisdiction of the supreme court to review decisions of the highest courts of a state is somewhat broader than that of a circuit court, for it extends to cases where a question arises under "a commission held or authority exercised under the United States." But as the federal question in the case at bar arises, if it exists at all, under the laws of the United States, that distinction cannot in any way affect this question. A careful reading of the opinion of the court in Tullock v. Mulvane, supra, will show that, while the first proposition involved in that case, as stated by the court, was, "Did the claim that there had been no breach of the condition of the bond because of the stipulation filed in the case in which the bond was given and because of the pendency of the appeal in the circuit court of appeals present federal questions?" was determined upon the ground that the right claimed was under an authority exercised under the United States, the second proposition in that case, "Did the claim of immunity from liability for attorney's fees, as one of the elements of damage under the injunction bond, present a federal question?" was determined by the court upon the ground that it arose under the statutes of the United States. Mr. Justice White, who delivered the opinion of the court, after showing that the equity rules had been promulgated by the supreme court by virtue of an act of congress (section 617, Rev. St., evidently a misprint, meaning section 917),[7] disposes of the objection to the jurisdiction that no federal statute was involved by saying:

"It follows that the proceedings in courts of equity of the United States are regulated by rules promulgated by this court, deriving their force from stautory authority, and the argument which we have just considered, even if it were not erroneous, would be inapposite." 184 U. S. 510, 22 Sup. Ct. 377, 46 L. Ed. 657.

In Railway Co. v. Taylor (C. C.) 86 Fed. 168, this question was fully discussed by Judge Clark, who, after a careful review of the authorities, held:

"It is apparent, I think, without extending the discussion further, that in that class of cases in which a federal question is involved, and on which jurisdiction in the courts of the United States depends, the character of the question is the same, whether the jurisdiction exercised is appellate, original, or by removal, the jurisdiction in either form depending on the constitutional grant of power. In this view, decisions of the supreme court of the United States in cases brought before it from the circuit courts of the United States, and those on writ of error to the highest court of a state, are equally instructive in determining when there is a federal question, such as supports the original jurisdiction of this court as being a suit 'arising under the constitution or laws of the United States, or treaties made or which shall be made under their authority,' excluding, of course, from the original jurisdiction, those which grow out of 'a commission held or authority exercised under the United States,' as explained in Carson v. Dunham, 121 U. S. 422, 7 Sup. Ct. 1030, 30 L. Ed. 992, and again in Cooke v. Avery, 147 U. S. 375, 13 Sup. Ct. 340, 37 L. Ed. 209." 86 Fed. 177.

The only distinction as to the jurisdiction of the two courts in actions claimed to arise under the laws of the United States is that in

[7] U. S. Comp. St. 1901, p. 684.

cases in a circuit court the federal question must appear upon the face of the complaint, and if it so appear the court will have jurisdiction of all the issues involved in the case; while in the supreme court, on error to a state court, it is sufficient if the jurisdictional question was raised and determined at any stage of the proceedings, and decided adversely to the right claimed under the federal constitution or laws, but in such cases the appellate jurisdiction extends only to the federal question and no other. Citizens' Ry. Co. v. Citizens' St. R. Co., 166 U. S. 557; Railroad Co. v. Bell, 176 U. S. 321, 20 Sup. Ct. 399, 44 L. Ed. 486; St. Paul, M. & M. Ry. Co. v. St. Paul & N. P. R. Co., 15 C. C. A. 167, 68 Fed. 2.

Leslie v. Brown, 32 C. C. A. 556, 90 Fed. 171, decided by the circuit court of appeals for the Sixth circuit, was also an action on an injunction bond, as in Tullock v. Mulvane, supra, but was instituted originally in the federal court. The jurisdiction of the court was challenged, but Judge Taft, who delivered the opinion of the court, said:

"We have no doubt that an action at law in the federal court may be brought on such a bond, provided the necessary amount is involved, on the ground that the plaintiff is enforcing rights secured to him under the constitution and laws of the United States."

In the case at bar the construction and application of section 915, Rev. St.,[8] and the rules of this court adopting the attachment laws of the state of Arkansas, are directly involved. As stated by Judge Thayer, in delivering the opinion of the circuit court of appeals for the Eighth circuit in St. Paul, M. & M. Ry. Co. v. St. Paul & N. P. R. Co., 15 C. C. A. 167, 179, 68 Fed. 2, 14:

"If a case is commenced originally in the circuit court, and, by a fair construction of the complaint, it appears that the plaintiff predicates his right to relief on the meaning or effect of a law of the United States, and the claim is made in good faith, so that there is a real instead of a merely colorable controversy, then jurisdiction over the case exists, even though it may appear that the right to the same relief is asserted on another ground, that does not involve the consideration of a federal question."

This action is therefore clearly one arising under the laws of the United States, and as the amount involved exceeds $2,000, exclusive of interest and costs, it is within the jurisdiction of this court.

2. But the jurisdiction of the court may be maintained upon another ground, that this action is merely ancillary to the original attachment suit. Under the attachment laws of the state of Arkansas, had the original suit against the plaintiff in this action not been dismissed, but brought to a trial, the court or jury trying the attachment could have assessed the damages sustained by the defendant by reason of the wrongful suing out of the attachment in the same proceeding and rendered judgment against the plaintiff and the sureties on the attachment bond. Section 362, Sand. & H. Dig. Ark., provides

"In all actions of attachment in which the defendant shall recover judgment for the discharge of the attachment, the court or jury trying said attachment shall assess the damages sustained by the defendant by reason of such attachment, and the court shall render judgment against the plaintiff and his sureties in the attachment bond for the amount of such damages and cost of the attachment."

8 U. S. Comp. St. 1901, p. 684.

Nor would it have been necessary, under that statute, to serve notice or process on the sureties before the judgment against them was rendered, as by executing the bond the sureties became parties to the action. Brugman v. McGuire, 32 Ark. 733; Fletcher v. Menken, 37 Ark. 206.

This proceeding may therefore be properly treated as ancillary to the original attachment suit, and is clearly within the rule established in this circuit by Mr. Justice Brewer while circuit judge, in Patterson v. Mather (C. C.) 26 Fed. 31, where it was held that an action on a bond executed by a defendant in an action of replevin pending in a national court may be maintained in that court, upon the ground "that jurisdiction in these subordinate and ancillary proceedings rests upon the jurisdiction acquired in the original action."

In Lamb v. Ewing, 4 C. C. A. 320, 54 Fed. 269, the circuit court of appeals for the Eighth circuit held:

"The rule is well settled that where a court rightfully takes jurisdiction over the parties and the subject-matter of a controversy it has the right, not only to render judgment in the first instance, but also to secure to the prevailing party the fruits of such judgment, and the original jurisdiction is a continuing one for that purpose; and, as corollaries to the general rule, it is also equally well settled that, where third parties have rights in or claims to property taken into the possession of the court under process issued against the original parties, such third parties may intervene in the proceedings for the protection of their rights; and, further, that, where the process of the court is wrongfully and illegally used to the injury of a third party, the latter may appeal to the court for proper redress. If the federal courts were deprived of the power to protect third parties against injuries resulting from the enforcement of process issuing from such courts by reason of the citizenship of the injured party, or because the amount of the injury was less than $2,000, it would work great hardship upon the individual citizen, and be a most serious blot upon the system of federal jurisprudence. The power of the courts of the United States in these particulars is as ample as that of the courts of the states, and the technical question of jurisdiction is solved by the ruling that in all ancillary or auxiliary proceedings for the enforcement of judgments rendered, and in proceedings for the protection of the rights of third parties, the jurisdiction is supported by that of the original action or suit."

See, also, Reilly v. Golding, 10 Wall. 56, 19 L. Ed. 858.

The demurrer to the jurisdiction must therefore be overruled.