PERRYMAN *v.* ABSTON, WYNNE & COMPANY.

Opinion delivered May 12, 1924.

1.  BILLS AND NOTES—FRAUD—EVIDENCE.—Evidence *held* to show that a note given by a landlord to secure advances made to his tenant was not procured by the payee's fraud.

2.  APPEAL AND ERROR—OBJECTION NOT RAISED BELOW.— Objection that an attachment should not have been sustained because the jurat to the affidavit therefor was not signed cannot be raised on appeal for the first time.

3.  MORTGAGES—CONVERSION OF PROPERTY BY MORTGAGEE.—Where mortgagees took possession of mortgaged chattels, but failed to sell them under the power of sale in the mortgage, they are chargeable with their market value at the time of their conversion.

Appeal from St. Francis Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*W. J. Lanier,* for appellants.

Any act or omission of duty on the part of the creditor, which is injurious to the surety, may be set up as a defense by the latter, in a suit brought against him in equity. 6 Ark. 317; 1 Story, Eq. Jur., 5th ed., § 324; 2 Pomeroy, Eq. Jur., 3d ed. §§ 907-912; 34 Ark. 44; 5 Ark. 284; 8 Ark. 74; *Id.* 141; 20 Ark. 309; 31 Ark. 657; 48 Ark. 426; 69 Ark. 126. Plaintiff was trustee of all property in its possession for the indemnity of the surety, and could neither convert it to its own use nor sell it to itself. 27 Am. & Eng. Enc. of L., 2d ed. 516; 34 Am. Dec. 757; 69 Am. Dec. 66; 19 Am. Dec. 311; 51 *Id.* 122; 41 *Id.* 685; 98 *Id.* 49. The surety was entitled to credits for all payments by the principal, and any defense the latter might make on account of payments to the creditor could be made by the surety. The liability of the surety cannot exceed that of the principal. 32 Cyc. 116; 21 R. C. L. 974, 1085; 50 Am. St. Rep. 75; 2 L. R. A. (N. S.) 232; 43 Am. Dec. 480. And the extent of the surety's liability is strictly limited to that assumed by the terms of his contract. 32 Cyc. 109; *Id.* 73; 21 R. C. L. 975, 976; 6 U. S. (L. ed.) 189; 38 Am. Dec. 310; 68 Minn. 193; 64 Am. St. Rep. 460; 61 Barb. 552; 174 Mass. 277; 171 Pa. St. 632.

*Mann & Mann,* for appellees.

1. It is too late to seek to take advantage of the failure of the officer to sign the jurat to the affidavit for the first time on appeal. 47 Ark. 49; 37 Ark. 206.

2. Albin having admitted the execution of the note sued on, the burden of proving the alleged fraud was on him. 78 Ark. 87. It is a defense which must be proved, and that proof must not only preponderate, but it must also clearly show that a fraud was practiced upon the person alleging it, and that he relied upon the representations to his injury. 14 Ark. 79; 92 Ark. 509; 12 R. C. L. 172, 173; 144 Ark. 97; 63 Ark. 16; 126 Ky. 749; 12 R. C. L. 427; 199 N. Y. 314. One cannot take advantage of his own negligence and carelessness and then claim fraud. 46 Ark. 347; 11 Ark. 66; 31 Ark. 170; 101 Ark. 603.

3. Albin having placed his name in blank on the back of the note at the time it was made, in order to give Perryman credit with the payee, became a joint maker of the note, and was not entitled to presentment, demand or notice of nonpayment and protest. 40 Ark. 545; 77 Ark. 53; 116 Ark. 420.

SMITH, J. This suit was brought by appellees in the circuit court of St. Francis County to enforce the payment of a note signed by Perryman and Albin. Albin resided in Springfield, Illinois, and service against him was by attachment, the writ of attachment having been levied on a tract of land owned by Albin in St. Francis County. Personal service was had on Perryman. Albin and Perryman filed an answer, alleging that the signature of Albin to the note had been procured by fraud, and that there were certain credits upon the note which had not been allowed, and there was a prayer that the cause be transferred to equity, and that an accounting be had and that the note be canceled. The cause was transferred to equity, and a decree was rendered sustaining the attachment, and judgment was rendered against both Albin and Perryman for the amount of the note, with interest, and they have appealed.

A portion of the land owned by Albin was in cultivation, and Perryman, who had rented it for the year 1919, had contracted to rent it for the year 1920 at $20 per acre. He applied to appellees, who are commission merchants in the city of Memphis, for assistance to make a crop, and, according to his version of the matter, advances amounting to $1,600 were promised him, on the condition only that Albin waive his lien as landlord.

Perryman testified that he and Albin went to the office of appellees to close the contract for advances, and that Albin was asked only to waive his lien as landlord and to indorse to appellees the rent notes he had taken from Perryman. Albin did not have these notes, two in number, with him at the time, but he stated that he could have them present in a short time, and that he went to the home of E. C. Cheney, where he was stopping, for the notes, and that, when he returned with the notes, Cheney accompanied him. Albin, Perryman and Cheney all testified that the note sued on was signed by Albin under the following circumstances: There was indorsed on the rent notes from Perryman to Albin authority to appellees to collect the rent and to apply it to the payment of appellee's debt, reading as follows: "I hereby appoint Abston, Wynne & Company my agents to collect the within rent note, and agree that they may apply all collected to the payment of any debt or debts that Grant Perryman or myself may owe them. (Signed) C. E. Albin." W. J. Abston, a member of the firm of Abston, Wynne & Company (appellees), had charge of the matter for his firm, and he had dictated the indorsement which was to be written on the Perryman notes, but he had left the office and was not present when Albin returned. The indorsement which had been dictated was typewritten on the notes by the stenographer in the office, and Albin signed both indorsements, and, after he had signed the indorsement on each of these notes, he was presented with a third note to be signed. Albin stated that he read the instrument and remarked to Mr. Crook, appellees' bookkeeper, who was in charge of the office at the time,

that the instrument appeared to him to be a note, but he was assured by Crook that the writing was a contract agreeing that appellees should be first paid. Albin handed the writing to Cheney, who was unable to read it on account of the indistinct light, but he stated to Albin that he could safely rely on the statement of Crook that the writing was what Crook represented it to be, and Albin, thus reassured, signed the writing. This writing is the note sued on, it being an ordinary promissory note, which was signed by Perryman and indorsed by Albin.

Abston and Crook testified that appellees agreed to furnish Perryman $1,600 to make the crop, but upon the condition only that Albin waive his lien and sign Perryman's note, and that Albin agreed to do this, and that, all the details-having been agreed upon, Abston left the office in charge of his bookkeeper, who secured the signatures of Albin to Perryman's note and the indorsement of Albin on Perryman's rent notes.

The note sued on was in fact for $1,691, but it was discounted and the proceeds thereof, amounting to $1,600, were placed to Perryman's credit, and advances equaling that sum were made Perryman by the time the crop was ready to be picked.

On October 28, 1920, appellees wrote Albin the following letter: "We are writing you with reference to Grant Perryman, and your place over in Arkansas, in which you have turned us over the rent notes and become security for the account. We understand he has a good crop, but has no hands much to gather it. We would suggest that it is very dangerous indeed to not have somebody to look after this crop. As you know, darkeys are not very particular to gather crops if they think there is not much in it for them, and it could dwindle away and not be applied on the indebtedness. You have got a good deal at stake, and we should think it would pay you to drop everything and come here and see to the gathering and marketing of this crop, as he will make probably from 15 to 20 bales, and, if he does not gather the cotton, of course you have the debt to pay. So we would advise

you to come immediately and look after the matter.'' Albin admitted receiving this letter, and, soon thereafter, left his home and went to his farm, and on his way there stopped in Memphis and called on appellees, but he did not at that time question his liability on the note sued on, and appears to have done so for the first time after the institution of this suit.

The chancellor found that the execution of the note sued on had not been procured by fraud, and we think that finding is not clearly against the preponderance of the evidence, and it must therefore be affirmed.

The court rendered judgment for the balance due on the note, and sustained the attachment and directed that the attached property be sold if the judgment was not paid.

It is urged that the attachment should not have been sustained for the reason that the affidavit therefor was not sworn to. It appears that the affidavit was signed by the attorney who made it, and his signature is followed by the jurat of the clerk, which, however, was not signed by the clerk.

This objection is made here for the first time, and therefore comes too late. *Fletcher* v. *Menken,* 37 Ark. 206; *Sannoner* v. *Jacobson,* 47 Ark. 31; *Bitteck* v. *State,* 67 Ark. 131. Had attention to the defect been called in the court below, it would no doubt have been amended, as it might have been. *Fortenheim* v. *Claflin, Allen & Co.,* 47 Ark. 49; *Kansas City So. Ry. Co.* v. *State,* 98 Ark. 179.

Several items on appellee's account are questioned; for instance, it is shown that appellees sold Perryman two mules, and that $50 was added to the cost of each of them. It appears, however, that appellees were not acting as Perryman's agents in the purchase of these mules, but the transaction was a sale of the mules for the sum of $632, and on May 25, 1920, a statement of the account to that date was furnished Perryman, showing the charge of this item, and its correctness was not challenged.

Credit is also claimed for cotton which Perryman testified he shipped to appellees and not accounted for;

but we are of the opinion that the finding of the chancellor that credit was given for all the cotton received is not clearly against the preponderance of the evidence.

About a month after the institution of this suit appellees sent their representatives to the farm, and took charge of all personal property described in the mortgage which Perryman had executed to appellees to secure the note sued on. This property included the two mules sold to Perryman for $632 and another mule and a horse, and also all of Perryman's farming implements, a wagon and some hay. Three witnesses testified that the property as so taken over at that time was worth $600, and two of these witnesses stated they would have given that sum for it, and one of them testified that he offered Abston $600 for the property, but the offer was declined. Abston stated at the time that he needed this property on his farm in Mississippi, and he would ship it there, and this he did. This was done, notwithstanding the mortgage provided that the property should be sold at public sale in St. Francis County, where the farm was situated, upon default in paying the debt there secured.

About thirty days after the property had been converted by appellees, Perryman executed a bill of sale therefor to appellees for the recited consideration of $300, and credit for that amount was given. Appellee's agent, who secured the execution of this bill of sale, testified that it was considered that Perryman had then no real interest in the property, as it was wholly insufficient to pay his debt. Appellees knew that Albin was only a surety for Perryman, and that it was at all times their intention to hold Albin for whatever balance might be due on final settlement, and they also knew there would be a balance, and, if Albin had paid this balance, he would have been entitled to be subrogated to the security held by appellees. Under these circumstances we think appellees should have sold the property publicly, under the power of sale in the mortgage, after advertisement, as there provided, and, having failed to do so, should be charged with the market value of the property at the

time of its conversion, which the testimony shows was $600. *Hudson* v. *Burton*, 158 Ark. 619; *Jones* v. *Horn*, 51 Ark. 19. The judgment should therefore be reduced to the extent of $300, and it is ordered that this be done, and the decree will be modified to allow this credit.