SOUTHERN RY. CO. et al. v. RAILROAD COMMISSION OF ALA-
BAMA et al.

(District Court, M. D. Alabama, N. D.    May 11, 1912.)

No. 267 C. C.

1. INJUNCTION (§ 235*)—LIABILITY ON BOND.
   Liability on an injunction bond in the federal courts is not fixed un-
   til a final decree in the cause, so that, when a condition of things arises
   where there can be no decree on the merits of the controversy or it
   would not be just to compel the parties to proceed to a final decree, a
   court of equity has power to modify or relax the conditions of the bond
   or suspend the right of action thereon.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 529–537; Dec.
   Dig. § 235.*]

2. CARRIERS (§ 12*)—STATUTES—VALIDITY—PRESUMPTION.
   A statute regulating and prescribing intrastate freight rates will be
   presumed valid until the contrary is shown by proof that it will not af-
   ford a fair and reasonable return on the value of the property employed
   in the service.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20;
   Dec. Dig. § 12.*]

3. CARRIERS (§ 202*)—FREIGHT RATES—STATUTES—REPEAL.
   Where a statute prescribing and regulating intrastate railroad rates
   is repealed, shippers and passengers, as to transactions completed while
   it was in force, in the absence of a judicial condemnation of the rates,
   have a vested right of action against the carrier for any excess charges
   above those allowed by the repealed statute while it was in force.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915; Dec.
   Dig. § 202.*]

4. INJUNCTION (§ 129*)—BOND—DISMISSAL OF SUIT—ACTION ON BOND—SUS-
   PENSION.
   The Alabama Legislature having passed a Passenger Rate Act (Laws
   1907, p. 104) and a Commodities Act (Laws 1907, p. 209), certain rail-
   roads instituted suits to enjoin the enforcement thereof, in which re-
   straining orders were issued on the giving of bonds.  No answers were
   filed and no evidence taken, and preliminary injunction was granted,
   after which the rates were put in force under an agreement that such act
   should not prejudice the plaintiff's right to continue the contest if the
   rates proved unremunerative.  Thereafter the state's authorities agreed
   with complainants that if they would abandon the contest they would
   give better rates, which agreement was kept by the subsequent passage
   of another act authorizing rates slightly higher than those sought to
   be enjoined, whereupon counsel for the railroad and the Commission ap-

---

*For other cases see same topic & § NUMBER in Dec; & Am. Digs. 1907 to date, & Rep'r Indexes

plied for a dismissal. *Held,* that the application should be granted and a right of action on the injunction bond suspended.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 279–287; Dec. Dig. § 129.*]

5. INJUNCTION (§ 235*)—BONDS—CONSTRUCTION.
A bond to secure an injunction against certain statutory intrastate railroad rates was conditioned that if the injunction was dissolved or vacated as having been wrongfully issued, or if it was thereafter determined that the rates, or any of them, the enforcement of which was sought to be enjoined, should be or should have been enforced, then plaintiff would pay or cause to be paid all loss or damage claimed by the issuance of the injunction, and in such event the obligation should be void, otherwise to remain in full force and effect. *Held,* that where the question at issue never went to trial by reason of an agreement between the railroad companies and the Commission under which other rates were prescribed, whereupon the suits were dismissed, there was no liability on the bonds; it never having been determined either that the injunction was wrongfully issued or that the rates should be enforced.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 529–537; Dec. Dig. § 235.*]

In Equity. Bills by the Southern Railway Company and six other Railroad Companies against the Railroad Commission of Alabama and others. On motion to dismiss and to discharge injunction bonds. Granted.

The Southern Railway Company and 11 other railroad companies filed their bills in the Circuit Court on the 25th of March, 1907, against the Railroad Commission and the Attorney General of Alabama, seeking, among other things, to enjoin the enforcement of the act of the Legislature of Alabama fixing 2½ cents per mile as the maximum intrastate passenger rate (Laws 1907. p. 104), and another act (Laws 1907, p. 209) which classified the railroads doing business in Alabama and fixed the maximum rates for the intrastate transportation of 110 commodities or articles of freight, and another act (Laws 1907, p. 80) which provided that the rates in force on the 1st day of January, 1907, should be the maximum intrastate freight rates on all other articles not included in the other statutes. A restraining order was issued March 30, 1907, and the hearing for a preliminary injunction went over at the request of the respondents until the 8th of May, 1907. No answers had then been filed in the cases, and no evidence whatever was offered by the respondents in answer to the allegations of the sworn bill of complaint, which was used as an affidavit, and the respondents admitted that in the then posture of the case a preliminary injunction was inevitable. Afterwards the Southern Railway and six others of the complainants put in force the passenger and commodity rates under an agreement with the state authorities, without prejudice to their right to continue their contest in the court, if a trial of the rates proved them to be unremunerative. Subsequently the state authorities made a trade with these complainants that if they would abandon their contest in the court they would be given better rates, which agreement, in substance, was carried into effect by the Legislature of Alabama, at a called session, in the enactment of what are known as the Eight Group Acts (Laws Sp. Sess. 1907, pp. 91–159). In consequence of this, and because the counsel for the Commission and the Attorney General in these cases also represented them in five other cases which were vigorously contested in this court, these suits of these complainants were never pressed to a trial on either side. The other facts are sufficiently stated in the opinion.

Alexander Hamilton, of Petersburg, Va., Alex. P. Humphrey, of Louisville, Ky., S. R. Prince, of Mobile, Ala., and John P. Tillman,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. G. Smith, and Forney Johnston, all of Birmingham, Ala., for complainant railroads.

Robert C. Brickell, Atty. Gen., and Samuel D. Weakley and Henry C. Selheimer, both of Birmingham, Ala., for Railroad Commission and others.

JONES, District Judge (after stating the facts as above). The Attorney General and the special counsel representing the Railroad Commission and the counsel for the complainants in the several cases jointly ask the dismissal, without prejudice, of the suits heretofore brought respectively by the complainants to enjoin the execution of the Passenger Rate Act and the 110 Commodities Act, and as ancillary thereto a decree suspending or abrogating the liability upon the injunction bonds given by the complainants.

[1-3] Liability upon an injunction bond in the federal courts is never fixed until a final decree in a cause, and when a condition of things arises where there can be no decree upon the merits of the controversy, or it would not be just to compel the parties to proceed to a final decree, as where they have agreed among themselves, it is the settled doctrine of the Supreme Court of the United States (Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060) that a court of equity has power, and if necessary should exercise it, to compass the ends of justice in such a situation, by modifying or relaxing the conditions of an injunction bond or suspending the right of action thereon. Legally speaking, a rate statute must be held good until it is shown by the proof, as applied to a particular carrier, that the statute will prevent a fair and reasonable return upon the value of the property employed in the service, and until that is shown the rate statute must be held to be prima facie valid, and if it be afterwards repealed, shippers and passengers, as to transactions completed while it was in force, in the absence of a judicial condemnation of the rates, have a vested right of action against the carrier for any excess charges above those allowed by the repealed statute while it was in force. Central of Georgia Railway Co. v. Railroad Commission of Alabama et al. (C. C.) 161 Fed. 979.

[4] The question then is: Ought the court to compel either the complainants or the respondents to incur the enormous expense of taking proof to show the effect of the Passenger Rate Act and the 110 Commodities Act, both of which acts must be considered as an entirety as to their results, when it is practically admitted that they were unreasonable, by the fact that, when complaint was made of the insufficiency of these statutes, the state authorities increased the freight rates and authorized an increase of $\frac{1}{4}$ cent per mile in the passenger rate, and, when at the time the order for the injunction was granted, the proof, which was the only proof ever introduced in the case, abundantly showed the insufficiency of the rates complained of as an entirety, and when the court is also satisfied from the proof made in cases already decided, contesting these statutes, under substantially similar conditions, that the rates in fact were confiscatory.

The interlocutory injunction issued on March 30, 1907, was modified at the request of these complainants to the extent of permitting them to "observe, pending the final hearing and determination of the causes, the rates" in question: but "without prejudice to the jurisdiction of the court in the cause or to the complainant's right to the relief sought in the suit." Under the letter of their agreements with the state authorities, the carriers would have the right, notwithstanding their observance of the rates in question, for the purpose of making an actual trial of them, still to obtain relief on the facts of the case. For the reasons stated, it now appears that complainants would be entitled to relief if they prosecuted their suits, and the real question is whether, under the circumstances, a court of conscience ought to compel the parties to litigate to avoid or to fix a liability which exists only in legal fiction and not in fact, when both sides are convinced no useful purpose would be subserved thereby. While the injunction bond was exacted under the equity powers of the court, which was not bound by the terms of the statute that no suit should be brought upon the bonds except upon the order of the Governor, yet the court cannot overlook the fact that the faith of the state was pledged, so far as the Governor and the Railroad Commission could pledge it, that complainants, when they accepted the increased compromise rates, should not be held to any legal liability upon the injunction bonds given by them on the contest of the original rates, or that complainants, in assenting to a temporary trial of the original statutory rates prior to the compromise allowing them increased rates, which was approved and carried into effect by the enactment of the Eight Group Acts, were endeavoring, in a very excited and troubled condition of the public mind, to make some adjustment as to rates which would tranquilize public sentiment and conform to the decision of the state authorities, whose judgments as to the reasonableness of the carriers' charges for their service are binding until set aside by the courts.

In an action at law the plaintiff, no matter what the inconvenience to the defendant, may dismiss his suit even against the objection of the defendant without incurring any liability except for costs, at any time before it is finally submitted to the tribunal in which the controversy is pending. I know of no case where a court of law has power to retain a case when both parties agree to its dismissal. So also in a court of equity, the complainant and defendant may by consent generally dismiss their case without incurring any liability on injunction or other bonds taken in the proceedings. The only case in which litigants in equity will not be permitted to compromise their differences, and dismiss a suit without prejudice, is where they occupy trust relations to others whose rights would be injuriously affected or destroyed by a consent decree dismissing the litigation absolutely, and in such cases a court of equity will make proper provision in the order of dismissal for the protection of their rights. Shippers and passengers, in litigation waged with public authorities who fix rates, are quasi parties to the suit. The rate-making authorities are in a large sense trustees for them in litigation

concerning the reasonableness of rates, and when they ask and consent to the dismissal of such a suit, the court ought not to question their action, unless it can see that it is clearly improper. In this matter, the state authorities, who are the chosen guardians of the rights of the public in this respect, are evidently acting in good faith and with high motives, and joining, as they do, in asking the relief now sought by all the parties to the litigation, the court has no hesitation in granting their joint request. Under the circumstances of these cases, the court cannot see that a dismissal of these suits and a suspension or abrogation of any right of action on the injunction bonds will impede or prejudice any real right of shippers or passengers, and it will therefore make an order providing for the cancellation of the injunction bonds, the dismissal of the suits at the complainants' cost, without prejudice, but saving to every passenger and shipper, who paid excess rates while the legislation complained of was in force, the right to sue the several complainants at law on their original cause of action.

[5] The court has preferred to rest its decision upon the merits of the case; but there is another reason, based upon the condition of the injunction bonds, why, in the absence of any determination that the rates complained of are unjust or unreasonable, no right of action can arise upon the injunction bonds. That condition is:

"Should said injunction be dissolved or vacated, as having been wrongfully issued, or should it be hereafter determined that the rates, or any of them, whose enforcement is sought to be enjoined * * * should be or should have been enforced," then complainant shall "pay or cause to be paid all loss or damage caused by the issue of said injunction," and in such event the "obligation to be void, otherwise to remain in full force and effect."

There has never been any determination in the causes dissolving the injunction as "wrongfully issued," or that the rates "whose enforcement is sought to be enjoined should be enforced" or should not have been enjoined or suspended. By the very terms of the bond no liability could arise upon it until the happening of some of these events, and none of them have happened. Nashville, Chat. & St. Louis R. R. Co. v. Railroad Commission et al. (C. C.) 171 Fed. 223.