ST. LOUIS, I. M. & S. RY. CO. v. BELLAMY et al.

(District Court, E. D. Arkansas, W. D. January 17, 1914.)

1. COURTS (§ 508*)—JURISDICTION OF FEDERAL COURTS—INJUNCTIONS.

Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), does not prohibit a federal court from enjoining the prosecution of a suit in a state court which would interfere with the execution of one of its own decrees in a suit of which it had prior jurisdiction, and such injunction may be granted on a supplemental bill ancillary to the main suit, although the suit in the state court was commenced before the supplemental bill was filed and by one not a party to the original suit.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1423, 1425–1430; Dec. Dig. § 508.*]

2. COURTS (§ 508*)—JURISDICTION OF FEDERAL COURTS—INJUNCTION.

A federal court, which has taken jurisdiction to determine the question of damages growing out of its issuance of an injunction, has exclusive authority to pass on all questions involved in that inquiry, and, when a large number of persons were affected by the injunction, it may enjoin suits brought by any of them in state courts to enforce their claims.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1423, 1425–1430; Dec. Dig. § 508.*]

3. COURTS (§ 508*)—REVERSAL—PROCEEDINGS—AFTER REMAND.

Complainant railroad company commenced a suit in the federal court against the Railroad Commissioners of a state to enjoin the enforcement of a schedule of rates and fares established by the Commission. A preliminary injunction was granted on the giving of a bond by complainant to the United States in the sum of $200,000, conditioned that if it should be finally determined that the injunction should not have been granted complainant would pay to the parties entitled thereto any excess of rates or fares collected above those enjoined. Later an additional bond was required and given running to the defendants in the suit in the sum of $800,000, similarly conditioned. A permanent injunction was granted, but the decree was reversed by the Supreme Court, with direction to dismiss the bill without prejudice. Held, that under Equity Rule 10 (29 Sup. Ct. xxvi), providing that "every person not being a party in any cause * * * in whose favor an order shall have been made, shall be enabled to enforce obedience to such order by the same process as if he were a party to the cause," the court had jurisdiction to retain the cause after dismissal of the bill for the purpose of enforcing the claims of all shippers and passengers under the bonds, and that in aid of such jurisdiction it had power to enjoin individual claimants from maintaining separate suits in the state courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1423, 1425–1430; Dec. Dig. § 508.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the St. Louis, Iron Mountain & Southern Railway Company against George W. Bellamy and others, Railroad Commissioners of Arkansas, and others. On supplemental bill for injunction. Injunction granted.

See, also, 230 U. S. 553, 33 Sup. Ct. 1030, 57 L. Ed. 1625; 189 Fed. 290.

This proceeding arose out of the Arkansas railroad rate cases which have been pending in this court for some time. The original suit was brought by the railroad company against the Railroad Commissioners of the state and two persons who are alleged to be shippers of freight and passengers on the road, as representatives of the shippers and passengers affected by the suit.

The plaintiff now files a supplemental bill as ancillary to the original proceeding, in which it sets out the filing of the original action; that on September 3, 1908, upon a hearing, after due notice to the defendants, a temporary injunction was granted by Judge Van Devanter, then one of the circuit judges for this circuit, enjoining the enforcement of the freight tariff and two cents a mile passenger rate. That order required that the complainants execute a bond to the United States in the penal sum of $200,000, conditioned that it would keep a correct account showing the difference between the rate actually charged by complainants after the granting of said injunction and that which would have been charged had the rates inhibited by said order of injunction been applied, and that if it should finally be decided that the order inhibiting the enforcement of the then existing rates should not have been made that the complainants would, within a reasonable time to be fixed by the court, refund in every instance to the party entitled thereto the excess as charged over what would have been charged had the inhibited rate been charged. In pursuance of this order complainant filed a bond conditioned as therein provided. (The opinion of the court granting that temporary injunction is reported in 163 Fed. 141.)

On February 18, 1909, an application was made to the judge now presiding for a modification of the temporary injunction, and on the 1st day of June, 1909, the temporary injunction formerly granted was modified, and a further order entered requiring complainant to execute an additional bond to the defendants in the sum of $800,000, conditioned that complainant should refund to all shippers of freight and passengers the amounts collected in excess of the rates fixed by the laws of the state of Arkansas, if it should be finally determined that the temporary injunction was improperly granted. 168 Fed. 720. A bond in conformity with this order, and reciting the conditions, was filed on the 5th day of July, 1909. On April 4, 1911, this court entered a final decree making the injunction perpetual and releasing the bond for injunction filed in said cause and the sureties thereon from further liability. 187 Fed. 290. Upon appeal to the Supreme Court the decree of the Circuit Court was reversed and the court directed to dismiss the bill without prejudice. 230 U. S. 553, 33 Sup. Ct. 1030, 57 L. Ed. 1625. On July 18, 1913, the mandate of the Supreme Court having been filed, this court entered an order dismissing complainant's aforesaid bill without prejudice and dissolving the temporary and permanent injunctions theretofore granted. It was further ordered, over complainant's objection, that said cause be referred to a special master appointed by the court for the purpose of determining the damages sustained by the defendants acting for the benefit of all persons, shippers, consignees, and passengers, who have sustained any damage by reason of the granting of said injunction. The order directed the special master to give notice by publication in a number of newspapers in the various counties through which the road ran that all persons having any claims against complainant by reason of the granting of said injunction should present the same to him on or before the 1st day of November, 1913, by filing with him the evidence, or such proof as might be in their possession, of their claims, and directing the master to make a report of his findings to the court. Afterwards the time within which such claims were to be filed was extended to January 1, 1914.

The supplemental bill further charges that the defendant Howard H. Gallup, notwithstanding the aforesaid proceedings and orders of this court to

present the claims to the special master, instituted an action in the chancery court of Baxter county, Ark., to recover from the railroad company the sum of $6,000 for charges alleged to have been made by the railroad company from the time the temporary injunction was first granted in 1908 to the time of the final dissolution on July 18, 1913; that W..J. Metcalf, who is also made a defendant in this proceeding, and a large number of other persons who were passengers or shippers on complainant's railroad during the time said order of injunction was in force, are threatening to institute similar suits in the various courts of the state. ·

It is also charged that a very large number of claims for refund of charges in excess of the inhibited rates during the time said orders of injunction were. in force, amounting to more than one-half million dollars, have been filed before the special master appointed in this cause and are now under investigation by said master, which proceeding involves a very large amount of expense in the way of master's costs and expenses; that in many instances duplicate claims covering the same shipment have been filed by parties severally claiming to be entitled to the alleged excessive charges, and it will be necessary to determine who among said claimants is entitled to recover any allowance that may be made by the special master in that behalf; that many claimants who were denied the right to recover by the master are threatening to bring independent suits against complainant for the recovery of the claims so presented to and refused by the master, and complainant represents that unless an order is issued in this cause enjoining and restraining proceedings for the recovery of such overcharges during the pendency of the aforesaid proceedings, and while said orders of injunction were in force, many thousands of suits will be instituted against complainant by passengers and shippers of freight during the time the injunction was in force; that the complainant would be required to produce its books and records in defending each of the numerous cases brought against it for the purpose of showing the difference· between the inhibited rates and those actually charged by it, and will be put to great expense and greatly harassed by being compelled to defend such a multitude of suits; that many of the suits so instituted would embrace claims that have already been passed upon by the special master appointed in the aforesaid· cause, and in many of which allowances have been made to other parties who were adjudged in said proceeding to be entitled to reparation on account of the alleged overcharges, and thereby complainant will be exposed to great loss and damage by reason of double recoveries in· favor of different parties upon the same claim, or else put to very great expense, trouble, and hazard in order to prevent great and irreparable loss and injury by reason of actions based upon claims presented to and allowed by the special master under the reference made to him; that the expense involved in the defense of such suits as will be instituted against it unless a restraining order is issued will be very great and involve great and serious loss to complainant without regard to the result of said litigation, notwithstanding the fact that this court has taken jurisdiction for the purpose of assessing the damages which accrued to shippers and passengers on account and by reason of said injunctions.

A copy of the complaint filed by the defendant Gallup in the chancery court of Baxter county, filed as an exhibit to the bill, shows that it is in the nature of a bill of discovery; it being alleged that the plaintiff Gallup cannot state the exact amount of such excess charges, and therefore prays for an accounting and a discovery of the amount of such payments.

The prayer of the supplemental bill is that these defendants, and all other persons having claims of that nature, ·be enjoined from instituting or prosecuting to judgment any action or actions for the recovery of such overcharges.

The order of reference to the special master directs him, among other things, to report separately all claims which arose under the first temporary injunction granted by Judge Van Devanter; next, all claims which arose under the bond executed in pursuance of the order made by the court on June 1, 1909; and, next, all claims which arose after the final decree making the injunction permanent was rendered ·on April 4, 1911, until the dissolution of the injunction and dismissal of the bill.

The defendant Gallup filed a motion to dismiss upon the ground that the· complainant was not entitled to any relief upon the facts stated in the sup-

plemental bill, and also filed a plea setting up the fact that his suit in the chancery court of Baxter county had been instituted prior to the filing of the supplemental bill, and an answer admitting all of the allegations set up in the supplemental bill.

The defendant Metcalf only filed a motion to dismiss the supplemental bill upon the ground that it does not state facts which would entitle complainant to relief.

A temporary restraining order was granted, and the cases have now been heard upon the pleadings and the motions to dismiss; the question before the court being whether the injunction should be made perpetual.

Among the rules of the Circuit and District Courts of this circuit is the following, promulgated on November 7, 1900 by the judges then composing the Circuit Court:

"In all cases in which an injunction has been granted, and a bond executed by the complainants, damages sustained by the party enjoined, in case the injunction is dissolved, may be assessed in the same proceeding, either by the court or by reference to a master, and judgment entered in the same action against the sureties on the bond; provided, however, that unless the damages are thus assessed in the cause, or a judgment entered that the party enjoined is entitled to no damages by reason of the improper granting of the injunction, he may proceed on the bond in an action at law without any further order or leave of the court."

Moore, Smith & Moore, of Little Rock, Ark., for complainant.

Allyn Smith, of Cotter, Ark., for defendants Gallup and another.

J. M. Hill, of Ft. Smith, Ark., for Railroad Com'rs.

Morris M. Cohn, Cockrill & Armistead, and Rose, Hemingway, Cantrell & Loughborough, all of Little Rock, Ark., amici curiæ for other shippers not parties to this bill.

TRIEBER, District Judge (after stating the facts as above). The argument of the numerous counsel took a very wide range, and a great many questions were discussed. Among others were the liability on the bonds, the liability of the railroad company regardless of the bond, before the final decree making the injunction perpetual was rendered by this court, and the liability of the railroad company on the bonds, as well as individually, for the excess rates collected after the injunction had been made perpetual by this court, and up to the time it was dissolved and the bill dismissed in obedience to the mandate of the Supreme Court. As these questions will have to be determined when the report of the special master comes up for hearing, the court deems it unnecessary to determine them in this proceeding. The only question properly before the court is whether this supplemental bill can be maintained as an ancillary proceeding to the original bill, and, if so, whether it is the duty of the court, in order to prevent the many thousands of suits which might be instituted in the different courts of the state to recover these overcharges, to enjoin the parties having these claims and determine the entire matter in the proceeding now pending in this court to ascertain the liability of the railroad company for the wrongful injunction.

[1] It is claimed that, the suit of the defendant Gallup having been instituted in the chancery court of Baxter county before the filing of this bill, no injunction can be issued by this court to stay that action, as that is expressly prohibited by section 720, Rev. St. (U. S. Comp. St. 1901, p. 581). That section does not apply to a proceeding which

is ancillary to a cause of which the court had original jurisdiction. As stated in Gunter v. Atlantic Coast Line, 200 U. S. 273, 292, 26 Sup. Ct. 252, 259 (50 L. Ed. 477):

"The proposition that the eleventh amendment, or section 720 of the Revised Statutes, controls a court of the United States in administering relief, although the court was acting in a matter ancillary to a decree rendered in a cause over which it had jurisdiction, is not open for discussion"—citing Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; Prout v. Starr, 188 U. S. 537, 23 Sup. Ct. 398, 47 L. Ed. 584; Julian v. Central Trust Co., 193 U. S. 93, 112, 24 Sup. Ct. 399, 48 L. Ed. 629.

To these cases may be added Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123; Lang v. Choctaw, etc., R. Co., 160 Fed. 355, 87 C. C. A. 307; Mound City v. Castleman, 187 Fed. 921, 110 C. C. A. 35.

In Root v. Woolworth the supplemental bill was filed several years after a decree in the original case had been rendered establishing the title of the grantor of the plaintiff in the supplemental bill. The jurisdiction of the court to grant such relief was attacked upon several grounds by the defendant; one of them being that there was no diversity of citizenship between the plaintiff and defendant in the ancillary proceedings, but the court held:

"The bill being ancillary to the original proceedings of Morton v. Root, and supplementary to the decree rendered therein, can be maintained without reference to the citizenship or residence of the parties. There is consequently no force in the objection that the court below had no jurisdiction in this case because the appellee and the appellant were both citizens of Nebraska."

Another objection was that the proceeding should have been an action of ejectment on the law side of the court. The court in overruling that objection held:

"If the bill in the present case could be properly considered as an ejectment bill, the objection taken thereto by the defendant would be fatal to the proceeding; but, instead of being a bill of this character, it is clearly a supplemental and ancillary bill, such as the court had jurisdiction to entertain. * * * It is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judgments which remain unreversed when the subject-matter and the parties are the same in both proceedings."

The court, after quoting section 338 of Story's Equity Pleading, proceeded:

"The jurisdiction of courts of equity to interfere and effectuate their own decrees by injunction or writs of assistance in order to avoid the relitigation of questions once settled between the same parties is well settled."

Nor is it necessary that the parties be the same.

"It is equally clear," the court in that case held, "that his assignee or privy in estate has the right to the same relief that Morton (the original party, and Woolworth's grantor) could have asserted"—quoting as authority for this rule of law section 429, Story's Equity Pleading.

Upon the same principle it has also been held that, if a state court refuses to grant a petition for removal to a federal court, when the petition and bond show that the cause is one properly removable, and a transcript of the record has been filed in the national court to which it was sought to have it removed, that court may by a proceeding an-

cillary in its nature grant an injunction restraining the plaintiff from proceeding with his cause in the state court without violating section 720, Rev. Stat. French v. May, 22 Wall. 250, note, 22 L. Ed. 857; Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 245, 25 Sup. Ct. 251, 49 L. Ed. 462.

For these reasons, if the court has jurisdiction to maintain this ancillary proceeding, the fact that the defendant Gallup had, before the filing of this supplemental bill, instituted his action in the state court, would not prevent this court from enjoining him from prosecuting that action by reason of the provisions of section 720, Rev. Stat.

Has the court jurisdiction to entertain the supplemental bill?

As this is an ancillary proceeding, the jurisdiction of the court depends upon the jurisdiction of the original cause, regardless of the fact that it would have no jurisdiction if this were an original proceeding.

In Riggs v. Johnson County, 6 Wall. 166, 187 (18 L. Ed. 768), it was held that:

"Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purpose for which it was conferred by the Constitution."

In Lamb v. Ewing, 54 Fed. 269, 4 C. C. A. 320, the Circuit Court of Appeals for this circuit held:

"The rule is well settled that, where a court rightfully takes jurisdiction over the parties and the subject-matter of a controversy, it has the right not only to render judgment in the first instance, but also to secure to the prevailing party the fruits of such judgment, and the original jurisdiction is a continuing one for that purpose; and as corollaries to the general rule it is also equally well settled that, where third parties have rights in or claims to property taken into the possession of the court under process issued against the original parties, such third parties may intervene in the proceedings for the protection of their rights; and, further, that, where the process of the court is wrongfully and illegally used to the injury of a third party, the latter may appeal to the court for proper redress. If the federal courts were deprived of the power to protect third parties against injury resulting from the enforcement of process issuing from such courts by reason of the citizenship of the injured party, or because the amount of the injury was less than $2,000, it would work great hardship upon the individual citizen and be a most serious blot upon the system of federal jurisprudence. The power of the courts of the United States in these particulars is as ample as that of the courts of the state, and the technical question of jurisdiction is solved by the ruling that in all ancillary or auxiliary proceedings for the enforcement of judgments rendered, and in proceedings for the protection of the rights of third parties the jurisdiction is supported by that of the original action or suit."

See, also, Reilly v. Golding, 10 Wall. 56, 19 L. Ed. 858; Cooke v. Avery, 147 U. S. 375, 390, 13 Sup. Ct. 340, 37 L. Ed. 209; Camp v. Boyd, 229 U. S. 530, 551, 33 Sup. Ct. 785, 57 L. Ed. 1317; Tyler Mining Co. v. Last Chance Mining Co., 90 Fed. 15, 32 C. C. A. 498; Lea v. Deakin (C. C.) 13 Fed. 514; Coosaw Mining Co. v. Farmers' Mining Co. (C. C.) 51 Fed. 107; Redlich Mfg. Co. v. John H. Rice & Co. (C. C.) 203 Fed. 722; Files v. Davis (C. C.) 118 Fed. 465.

In Russell v. Farley, 105 U. S. 433, 445, 26 L. Ed. 1060, a leading case on this subject, it was held, Mr. Justice Bradley delivering the

211 F.—12

opinion of the court, that the right of the court to settle the liability of the parties in an injunction proceeding was inherent in every court of chancery, and does not depend on any provision in the bond nor on the existence of an express law or rule of court.

One of the principal questions involved in this proceeding is the construction of the effect of the final decree rendered in the main cause.

In Tullock v. Mulvane, 184 U. S. 497, 505, 22 Sup. Ct. 372, 375 (46 L. Ed. 657), it was held that an action on an injunction bond given in a cause pending in a court of the United States raises a federal question, and therefore a judgment of the highest court of the state on such a bond is subject to review on error by the Supreme Court. In that case the opinion was delivered by Mr. Justice, now Mr. Chief Justice, White, and it was held:

"It is settled that such court (meaning the national court in which the injunction bond had been given) has the inherent right to set the bond aside and to determine in its discretion whether a recovery could be had upon it"—citing Russell v. Farley, supra.

A similar conclusion was reached in M., K. & T. Ry. Co. v. Elliott, 184 U. S. 534, 22 Sup. Ct. 446, 46 L. Ed. 673, which was on error to the highest court of the state of Missouri, and Leslie v. Brown, 90 Fed. 171, 32 C. C. A. 556; National Foundry Co. v. Oconto Water Supply Co., 183 U. S. 216, 233, 22 Sup. Ct. 111, 46 L. Ed. 157.

[2] This court, having taken jurisdiction for the purpose of determining the question of damages growing out of the injunction, clearly has the exclusive right and authority to adjudicate and pass upon all questions involved in that inquiry; and especially is this true in a case like the one at bar, where there are probably 50,000 claims for overcharges, all arising out of the injunction granted by this court in the original cause. To prevent such a multiplicity of suits would be sufficient to justify a court of equity to maintain jurisdiction of an ancillary proceeding in which all these matters can be determined in one reference. Concurring opinion of Mr. Justice Miller in Chicago, etc., Ry. Co. v. Minnesota, 134 U. S. 418, 460, 10 Sup. Ct. 462, 702, 33 L. Ed. 970, approved in Ex parte Young, 209 U. S. 123, 166, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

[3] It is further contended that in the bond for $200,000 the United States is the sole obligee, and in the second bond for $800,000 the Railroad Commissioners of the State of Arkansas and the two other defendants named as representatives of the shippers as a class were the only obligees, and for this reason the defendants in the supplemental bill, not having been parties of record in the original proceeding, have no standing in that case, and are therefore remediless so far as there is a liability on the bonds. Therefore it is claimed that this court is without jurisdiction to maintain an ancillary bill against shippers not parties to the bonds, and their only remedy is by independent actions against the railroads.

Even if it were true that the bonds were only the ordinary injunction bonds "to pay the defendants all damages they may sustain by reason of the granting of the injunction, if upon final hearing it should

be determined that the injunction was improperly granted," this contention of the defendants Gallup and Metcalf could not be sustained. In an action of this nature, against public officers who by law fix carriers' rates, shippers and passengers are quasi parties to the suit. Southern Railway Co. v. Railroad Comm. of Alabama (D. C.) 196 Fed. 558, 561. The Railroad Commissioners are not acting for themselves in this proceeding, nor for the state as a state, for neither could be benefited or injured pecuniarily no matter what the result of the litigation may be. Their only interest is that of the state in a governmental sense. They merely act as trustees for the shippers and passengers on these roads, and represent them in the same manner as the trustee of a railroad mortgage represents the holders of the bonds secured by the mortgage. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 390, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Missouri, etc., Ry. Co. v. Missouri Board of Comm., 183 U. S. 53, 59, 22 Sup. Ct. 18, 21 (46 L. Ed. 78).

In the last-cited case it was said:

"It is not an action to recover any money from the state. Its results will not inure to the benefit of the state as a state in any degree. * * * The parties interested are the railway company, on the one hand, and they who use the bridge, on the other; the one interested to have the charges maintained as they have been, the other to have them reduced in compliance with the order of the Commissioners. * * * It is true that the state has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws. But such general governmental interest is not that which makes the state, as an organized political community, a party in interest in the litigation. * * * The interest must be one in the state as an artificial person."

But, aside from this, each of the bonds in this case expressly provides that it is for the benefit of all shippers and passengers. The conditions in the first bond are:

"If it should eventually be decided that so much of this order as inhibits the enforcement of existing rates should not have been made, the said complainant shall, within a reasonable time to be fixed by the court, refund in every instance to the party entitled thereto the excess it charged over what would have been charged had the inhibited rates been applied."

And in the other bond the condition is:

"If it should eventually be decided that so much of this order as inhibits enforcement of the rates prescribed * * * the complainant shall refund to the owners and holders of the certificates issued by it (showing the excess payments) the excess charges as shown by the same."

It will thus be seen that when the temporary injunction was granted by the court it reserved to itself the right to require the railroad and the sureties on its bonds to "refund in each instance to the party entitled thereto" the moneys collected in excess of the enjoined rates as directed by the court. The orders of the court and the bonds given in pursuance thereof are just as much for the benefit of every shipper and passenger as those who were made parties defendants to the suit as representatives of all shippers and passengers. To have made all shippers and passengers parties to the original action would, of course, have been, if not impossible, at least impracticable, for it would have necessitated making every inhabitant of the state, and even nonresi-

·dents, parties defendants. To avoid this, and by authority of Equity Rule 48 (29 Sup. Ct. xxxi), then in force, the bill made two shippers and passengers defendants as representatives of all other shippers and passengers. In West v. Randall, 2 Mason, 181, Fed. Cas. No. 17,424, it was held by Mr. Justice Story that even in the absence of such a rule that course would be a proper one.

Equity Rule 10 (29 Sup. Ct. xxvi), then in force, provided:

"Every person, not being a party in any cause, who has obtained an order, or in whose favor an order shall have been made, shall be enabled to enforce ·obedience to such order by the same process as if he were a party to the cause."

And it has been held that bidders or purchasers at a foreclosure sale, although not parties to the suit, are entitled to appeal as to matters affecting them. Blossom v. Milwaukee, etc., R. Co., 1 Wall. 655, 17 L. Ed. 673; Kneeland v. American L. & T. Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379.

In re Farmers' Loan & Trust Co., 129 U. S. 206, 213, 9 Sup. Ct. 265, 266 (32 L. Ed. 656), Mr. Justice Miller said:

"But the doctrine that, after a decree which disposes of a principal subject of litigation and settles the rights of the parties in regard to that matter, there may subsequently arise important matters requiring the judicial action ·of the court in relation to the same property and some of the same rights litigated in the main suit, making necessary substantive and important orders and decrees in which the most material rights of the parties may be passed upon by the court, and which, where they partake of the nature of final decisions of those rights, may be appealed from, is well established by the decisions of this court."

In that case a mandamus was granted to the judges of the Circuit Court to grant an appeal from an order made after final decree, and while the cause was pending on appeal in the Supreme Court.

Suppose the court, when it granted the temporary injunction, had required the railroad company to deposit in the registry of the court all the excess charges, to be there impounded until the final determination of the cause. Can there be any doubt of the power of the court in that case to have enjoined shippers from maintaining independent suits in other courts for the recovery of such excess charges? When the ·court, instead of requiring such deposits, exacted a bond to do the same thing, why does not the bond take the place of the money, and authorize the court to do what it would have done if the money were in the registry? This objection must therefore be overruled.

On the part of some of the shippers counsel concede that the court would have the right to retain jurisdiction of the ancillary proceeding, but insist that the injunction be granted only upon condition that complainant will not contest its liability but only the amounts claimed. There can be no doubt that the court in granting an injunction has the power to impose reasonable conditions, as the writ of injunction is not a writ of right but one of discretion; but that does not mean an arbitrary discretion, dependent solely on the whim of the chancellor. It means a sound, judicial discretion, informed and directed by the established principles, rules, and practice of equity jurisprudence. This question was fully discussed in the opinion filed in this case in 168 Fed. 720, where many authorities are cited. To grant an in-

junction upon such conditions that the party asking it waive its defense and concede its liability, when that liability is one of the main questions in issue, would be a travesty on justice and as much a deprivation of its property without due process of law as was the act condemned in Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215. Of what benefit is the injunction to the complainant if at the same time it must, in effect, pledge itself to confess judgment?

If the defendants had suggested to the court that there is some doubt as to the solvency of the complainant or its ability to pay any decree that may be finally rendered against it, the court would no doubt have required a bond conditioned that it would satisfy any decree which may be finally rendered against it; but no such demand nor suggestion was made.

The object of this ancillary proceeding is to determine whether the plaintiff is liable, and, if so, to whom and for what sums. The jurisdiction might also be maintained upon the ground that when a court of equity once obtains jurisdiction it has the right to retain it for the purpose of settling all matters arising by reason of the litigation. Dewing v. Perdicaries, 96 U. S. 193, 24 L. Ed. 654; Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554, 33 L. Ed. 909; United States v. Union Pacific R. Co., 160 U. S. 1, 16 Sup. Ct. 190, 40 L. Ed. 319; Hopkins v. Grimshaw, 165 U. S. 342, 17 Sup. Ct. 401, 41 L. Ed. 739.

The decisions of the Supreme Court in Re City of Louisville, 231 U. S. 639, 34 Sup. Ct. 255, 58 L. Ed. ——, and in Re John Engelhard & Sons Co., 231 U. S. 646, 34 Sup. Ct. 258, 58 L. Ed. ——, opinions filed January 5, 1914, and just to hand, are very much in point and, in the opinion of this court, sustain the conclusions reached herein.

The court fully realizes that the question of jurisdiction of a national court in cases of this nature is always a delicate one. But, as stated by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 404 (5 L. Ed. 257):

"It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the Legislature may, avoid a measure because it approaches the confines of the Constitution. * * * We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously to perform our duty"— quoted and followed in Ex parte Young, supra.

As the parties agreed in open court that a final decree may be entered, the defendants declining to plead further, a perpetual injunction is granted, restraining these defendants and all other persons similarly situated from instituting or maintaining any suits for excess of charges collected by the complainant during the pendency of this injunction.